Floyd FETNER, Plaintiff-Appellant,

v.

The CITY OF ROANOKE, a Municipal Corporation; Henry V. Bonner, etc. et al., Defendants-Appellees.

No. 86–7285.

United States Court of Appeals, Eleventh Circuit.

April 6, 1987.

McPhillips, DeBardelaben & Hawthorne, Jim L. DeBardelaben, Julian McPhillips, Montgomery, Ala., for plaintiff-appellant.

Ball, Ball, Duke & Matthews, P.A., William H. Brittain, II, John S. Thrower, Jr., Montgomery, Ala., for defendants-appellees.

Before GODBOLD and VANCE, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

VANCE, Circuit Judge:

Floyd Fetner appeals the district court's grant of summary judgment in favor of defendants City of Roanoke, its Mayor, and its City Council members. Fetner filed this action under 42 U.S.C. § 1983, claiming that defendants dismissed him from his position as police chief without cause and in violation of his due process rights under

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

the Fourteenth Amendment.[1] Fetner asserts that at approximately 9:30 p.m. on January 30, 1985, a telephone call from Mayor Bonner summoned him to appear immediately at a City Council meeting where his conduct as police chief was discussed. The following morning, Mayor Bonner allegedly informed Fetner that the City Council had unanimously voted to fire him as police chief. Fetner claims that defendants' willful failure to give him written notice of the reasons for his termination or to afford him a formal hearing violated his constitutional rights. Fetner seeks reinstatement as police chief, back pay, compensatory damages, and punitive damages.

The district court interpreted the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as requiring summary judgment for the defendants. In the district court's view, *Parratt* stands for the proposition that a procedural due process claim can be brought in federal court only if there exists no effective procedure for relief in the state system. Since Fetner could have pursued a state personnel proceeding, a state court action for violation of Alabama Code § 11–43–160,[2] or a § 1983 claim in state court, the district court concluded that Fetner had no right to a federal forum to hear his § 1983 claim.[3]

■ The district court's analysis cannot be correct. Its reasoning requires that, before a federal court can entertain a § 1983 claim, a plaintiff must have first attempted to bring this § 1983 claim in state court. Such a rule would virtually eliminate the role of the federal courts in the enforcement of constitutional rights. This result would be in clear opposition to the very purpose of § 1983. The legislative history of the Act, originally called the Ku Klux Klan Act, demonstrates that Congress was concerned with affording a federal remedy "against incursions under the claimed authority of state law...." *Mitchum v. Foster*, 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972). Congress further indicated that an important aspect of the Act was that federal courts directly supervise the enforcement of these federal remedies, regardless of the existence of state courts and comparable state law remedies. *Patsy v. Board of Regents*, 457 U.S. 496, 502–08, 102 S.Ct. 2557, 2560–64, 73 L.Ed.2d 172 (1982); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1498 (11th Cir.1985) (en banc), *cert. denied*, — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). To require that § 1983 claims first be brought in state court would be contrary to the clear intent of Congress to strengthen the federal court's role in protecting basic federal rights.[4]

---

1. Fetner's complaint asserts "a violation of substantive procedural [sic] due process and equal protection of the laws to which he is guaranteed by the Fourteenth and Fifth Amendments of the Constitution of the United States." It is clear that plaintiff cannot make out the elements of a substantive due process or Fifth Amendment violation and that he has dropped these claims on appeal.

2. Section 11–43–160 of the Alabama Code provides:

Any person appointed to office in any city or town may, for cause, after a hearing, be removed by the officer making the appointment.

The City Council may remove, by a two thirds vote of all those elected to the council, any such person in the several departments for incompetency, malfeasance, misfeasance, or nonfeasance in office and for conduct de-

trimental to good order or discipline, including habitual neglect of duty.

*See also Godwin v. City Council of the City of McKenzie*, 449 So.2d 1231 (Ala.1984); *Chandler v. City of Lanett*, 424 So.2d 1307 (Ala.1982); *Hayden v. Town of Riverside*, 351 So.2d 577 (Ala.Civ.App.1977), *cert. denied*, 351 So.2d 582 (Ala.1977).

3. The district court stated:
[I]n order for plaintiff to proceed herein, he must show that either he has no available remedy for redress in the State system or that he has exhausted such State-provided remedies without being properly redressed.
The district court also noted, in denying plaintiff's motion to reconsider, that there was no need for a federal forum since plaintiff could "file a lawsuit in State court naming the same defendants and alleging the same cause of action."

4. "The very purpose of § 1983 was to interpose the federal courts between the States and the

The district court also appears to require that a plaintiff bringing an action under § 1983 in federal court exhaust state judicial and administrative procedures. This ruling falls to a similar analysis. The direct supervision of federal courts in the protection of the federal remedies established in § 1983 is a critical part of the Act.[5] The Supreme Court repeatedly has made clear that the right to bring an action under § 1983 need not depend on the exhaustion of state judicial or administrative procedures. *See, e.g., Patsy v. Board of Regents,* 457 U.S. 496, 503, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982); *Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222–23, 39 L.Ed.2d 505 (1974); *Gibson v. Berryhill,* 411 U.S. 564, 574, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973); *McNeese v. Board of Education,* 373 U.S. 668, 671–73, 83 S.Ct. 1433, 1435–36, 10 L.Ed.2d 622 (1963); *see also Gilmere v. City of Atlanta,* 774 F.2d 1495, 1499 (11th Cir.1985) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).[6]

The district court also can be understood to have held that Fetner suffered no *constitutional* deprivation since adequate due process was provided by the post-deprivation remedies available through state personnel proceedings and a state law suit under Alabama Code § 11–43–160.[7] *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908,

68 L.Ed.2d 420 (1981), appears to support this holding. *Parratt* involved a tortious loss of a prisoner's property as a result of a random and unauthorized act by a State employee. In *Parratt,* the Supreme Court determined that the tort remedies established by the State of Nebraska to redress property deprivations satisfied the requirements of due process. Although the *Parratt* Court recognized that due process usually requires notice and a hearing before the State may interfere with a citizen's liberty or property, the Court concluded that pre-deprivation measures were "not only impracticable, but impossible" where the deprivation was caused by a negligent act unauthorized by the State. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916.

The City Council's decision to dismiss Fetner presented the district court with a wholly different factual premise. In contrast to the situation in *Parratt,* the injury to Fetner's property interest was caused by a conscious and deliberate act of the City's highest governing board. *Compare Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The Roanoke City Council had ample time to give Fetner notice and offer him an opportunity to be heard before they fired him. The touchstone in *Parratt* was the impracticability of holding a hearing prior to the claimed deprivation. *Id.* at 539–41, 101

---

people, as guardians of the people's federal rights ..." *Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972) (quoting *Ex Parte Virginia,* 100 U.S. 339, 346, 100 U.S. (10 Otto) 339, 25 L.Ed. 676 (1880)).

5. "[I]n passing § 1 [the precursor to § 1983], Congress assigned to the federal courts a paramount role in protecting constitutional rights." *Patsy v. Board of Regents,* 457 U.S. 496, 503, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982); *see also Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222–23, 39 L.Ed.2d 505 (1974).

6. *Parratt* does not affect the rule regarding exhaustion of state remedies. As the Fourth Circuit stated in *Daniels v. Williams,* 720 F.2d 792, 794 n. 1 (4th Cir.1983), *aff'd,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986):

Exhaustion of state judicial or administrative remedies is not a prerequisite to section 1983 actions, *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492] (1961), except for those cases falling under the narrow ex-

haustion scheme embodied in 42 U.S.C. § 1997. *See Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). *Parratt* does not change this rule. An exhaustion requirement would merely require a plaintiff to exhaust his state remedies before bringing a section 1983 action in federal court. *Parratt,* by contrast, stands for the proposition that a plaintiff may sue only in state court if he fails to state a procedural due process claim under section 1983. Unlike an exhaustion requirement, which is based upon principles of comity, the Parratt analysis is based upon the concept that there is no constitutional violation if a plaintiff has not been deprived of a protected interest without due process of law.

7. It is not disputed that Fetner possessed a property interest in his continued employment under Alabama law. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Schultz v. Baumgart,* 738 F.2d 231, 234–35 (7th Cir.1984).

S.Ct. at 1914–16. In Fetner's case, meaningful pre-deprivation process was viable.

■■■ Post-deprivation remedies do not provide due process if pre-deprivation remedies are practicable. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). Where, as in this case, a deprivation of property is authorized by an established state procedure and it is practicable for the State to provide pre-deprivation procedures, due process has been consistently held to require pre-deprivation notice and a hearing in order to reduce the possibility of a wrongful deprivation. *Parratt*, 451 U.S. at 538, 101 S.Ct. at 1914. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Fetner thus states a valid procedural due process claim when he alleges that the defendants failed to give him written notice or a hearing before firing him.[8]

■■■ Defendants argue that this court should dismiss plaintiff's claim without reaching the constitutional questions addressed above. Defendants contend that Fetner resigned and thereby waived his right to notice and a hearing. According to the defendants, when Mayor Bonner spoke to Fetner on the morning of January 31, 1985, the Mayor gave Fetner the option of either resigning or having a public hearing and being fired. Defendants maintain that Fetner then informed Bonner that he resigned. If Fetner did in fact resign rather than face a public hearing, Fetner cannot prevail. *See Stewart v. Bailey*, 556 F.2d 281 (5th Cir.1977). Fetner, however, denies that he ever resigned. Fetner asserts that the Mayor told him that the City Council had fired him by unanimous vote the night before and that Fetner therefore believed that he had already been terminated. Fetner points out that, while he talked to Bonner about resigning at some point in the future and did apply for unemployment insurance, he never submitted a formal written resignation. As the district court noted, the issue of whether Fetner resigned or was fired is a disputed question of fact, precluding summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).[9]

This case appears to involve a garden-variety summary dismissal. There is no evidence that the City could not have easily complied with the minimal requirements of due process by giving Fetner pre-deprivation notice and a hearing. Regardless of the existence of post-deprivation remedies, the allegation that defendants failed to accord Fetner even the most minimal process before he was fired raises a procedural due process claim under § 1983. The merits of that claim are properly before the district court.

REVERSED and REMANDED.

---

8. Facing a closely analogous set of facts involving a fire fighter, the Seventh Circuit commented:

> [W]e note that if Schultz was indeed fired in violation of his due process rights, the availability of *post-deprivation* grievance procedures or a board hearing would not have cured the violation. Schultz was entitled to notice and a meaningful opportunity to respond *before* he was terminated. If he was terminated without those protections, the constitutional deprivation was then complete. Schultz need not have exhausted other state remedies before bringing his § 1983 claim. *See Patsy v. Board of Regents*, 457 U.S. 496,

516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *Vail v. Board of Education, supra,* 706 F.2d [1435] at 1440–41 [7th Cir.1983]; *id.* at 1445–46 (Eschbach, J., concurring).

*Schultz v. Baumgart*, 738 F.2d 231, 237 (7th Cir.1984) (emphasis in original).

9. Moreover, if Fetner's resignation is found to be the coerced product of defendants' threats of an immediate firing without due process, the resignation would not constitute a knowing and intelligent waiver of due process rights. *See Bueno v. City of Donna*, 714 F.2d 484 (5th Cir. 1983).