**Erma RAY, Plaintiff–Appellant,**

v.

**CITY OF LEEDS, and Jack Courson, individually and in his capacity as Mayor of the City of Leeds, Defendants–Appellees.**

**No. 87–7246.**

United States Court of Appeals, Eleventh Circuit.

Feb. 25, 1988.

Falkenberry, Whatley & Heidt, Joe R. Whatley, Jr., Lisa J. Huggins, Birmingham, Ala., for plaintiff-appellant.

Rushton, Stakely, Johnston & Garrett, P.A., Robert C. Brock, William S. Haynes, Wade K. Wright, Montgomery, Ala., for defendants-appellees.

Before ANDERSON, EDMONSON and GOODWIN\*, Circuit Judges.

PER CURIAM:

Erma Ray brought this action under 42 U.S.C. § 1983 (1982) against the City of Leeds and Jack Courson, individually and in his capacity as mayor of the City of Leeds, alleging that the defendants violated her rights to freedom of speech and due process by discharging her from her position as Director of Community Services for the City of Leeds. She appeals the summary judgment for the defendants.

\* Honorable Alfred T. Goodwin, U.S. Circuit Judge, for the Ninth Circuit, sitting by designa-

Ray worked in Courson's 1980 reelection campaign for mayor. After his reelection, Courson offered Ray a part-time position with the City of Leeds as director of its Senior Citizens Department. Subsequently, she became a full-time employee, and her title later was changed to Director of Leeds Community Service. Her department performed basic social work with senior citizens and assisted needy families by arranging and providing food and clothing. She worked directly for the mayor and had the authority and discretion to meet the needs of the community as she saw them with the resources available to her in her department. Ray knew that she was, and considered herself to be, the head of a city department.

In 1984, Ray did not actively work in Courson's reelection campaign. She expressed a belief that she could not actively support any candidate because she was a city employee. When a community services volunteer asked Ray for advice concerning the upcoming mayoral election, Ray did not recommend that she vote for Courson.

Ray was fired without a hearing three days after the election. For the purposes of summary judgment, we assume that Ray's failure actively to support Courson in the 1984 election was a substantial motivating factor in her termination. The district court, in granting summary judgment, found that Ray failed to establish the requisite showing under § 1983 that the City's policy or custom is to terminate persons who failed to support Courson. The court also rejected her first amendment claims, finding that neither Courson nor any other city official attempted to coerce Ray into actively supporting him, and, alternatively, that Ray held a policymaking position with the city and therefore could be terminated by the Mayor at will. Finally, the court held that Ray had no due process right to a pretermination hearing because at will employees lack a property interest in city employment.

tion.

We affirm the summary judgment on the ground that because Ray held a policymaking position she could be discharged for political reasons. *See Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 2687, 49 L.Ed. 2d 547 (1976) (plurality opinion) (finding that "the need for political loyalty of employees" may be served by "[l]imiting patronage dismissals to policymaking positions").

The *Elrod* plurality, while recognizing that "[n]o clear line can be drawn between policymaking and nonpolicymaking positions," observed that:

> The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals....

*Id.* at 367–68, 96 S.Ct. at 2687.

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court modified the requisite inquiry:

> In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Id.* at 518, 100 S.Ct. at 1295. *See Tanner v. McCall,* 625 F.2d 1183, 1190 (5th Cir. 1980) (observing that *Branti* requires the employer to "show that the required political support or affiliation is relevant or essential to the job"), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

We agree with the district court that Ray acted as a policymaker. She had the authority and discretion to deploy the resources available to her in order to address needs as she saw them. She set the policy of the Leeds Community Services Department, subject only to the authority of the mayor; she implemented a number of programs for the needy in the community. She was a department head who attended city council meetings and made presentations concerning the goals and accomplishments of her department. As the district court observed, "[i]f Ray's job description does not constitute a policymaking position, then no such unelected position exists in Leeds."

We reject Ray's argument that her political beliefs were unrelated to the effective performance of her job. Where a policymaker's position requires decisions concerning the allotment of scarce resources, her political beliefs and her compatibility with the hiring authority clearly are relevant to her performance. *See Tomczak v. City of Chicago,* 765 F.2d 633, 641 (7th Cir.) (finding that "an employee's position is unprotected if, first, there is room for principled disagreement in the decisions reached by the employee and his superiors, and, second, he has meaningful direct or indirect input into the decisionmaking process"), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985); *accord Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987).

The survey of cases set forth in *Jimenez Fuentes,* 807 F.2d at 241, reinforces our conviction that Ray's position was one commonly deemed to involve policymaking and that she therefore could be discharged for political reasons. *See Brown v. Trench,* 787 F.2d 167 (3d Cir.1986) (Assistant Director of Public Information for the county); *Tomczak,* 765 F.2d 633 (First Deputy Commissioner of the Department of Water); *Shakman v. Democratic Org. of Cook County,* 722 F.2d 1307 (7th Cir.) (Superintendent of Employment for Chicago Park District), *cert. denied,* 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983); *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir. 1981) (Senior Citizens' Coordinator), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). Those cases finding

that plaintiffs might not be policymakers and therefore are not subject to dismissal under *Elrod* and *Branti* have involved individuals who had considerably less discretion than did Ray. *See Meeks v. Grimes*, 779 F.2d 417 (7th Cir.1985) (city court bailiffs); *Horton v. Taylor*, 767 F.2d 471 (8th Cir.1985) (road-graders); *Grossart v. Dinaso*, 758 F.2d 1221 (7th Cir.1985); *Barnes v. Bosley*, 745 F.2d 501 (8th Cir.1984) (deputy court clerks), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2022, 85 L.Ed.2d 303 (1985); *Jones v. Dodson*, 727 F.2d 1329 (4th Cir.1984) (deputy sheriff).

Our holding that Ray was a policymaker subject to discharge for political reasons disposes of Ray's § 1983 and due process claims. Her discharge was not unlawful and she had no property interest in her employment. It is not necessary to reach Ray's first amendment claims.

AFFIRMED.