**Edward H. LOVELL, Plaintiff,**

**v.**

**FLOYD COUNTY, a county corporation; Edward E. Perkins, in his capacity as Chairman of the Floyd County Board of Tax Assessors and individually; John Horace Anthony, in his capacity as member of the Floyd County Board of Tax Assessors and individually; Robert Lewis Fricks, in his capacity as member of the Floyd County Board of Tax Assessors and individually; General L. Sutton, Polly Clemmons, David B. McCorkle, Ronnie L. Simmons and Henderson Spivey, in their capacities as members of the Floyd County Merit Board, Defendants.**

**Civ. A. No. 4:85–cv–211–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

March 31, 1989.

David G. Archer, Archer & Howell, Cartersville, Ga., for plaintiff.

C. King Askew, J. Anderson Davis, Brinson Askew & Berry, Jerry Lee Minge, Minge & Foss, Rome, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

Edward H. Lovell filed this civil rights action claiming his constitutional rights were violated when he was terminated from his position as a tax appraiser for Floyd County. The defendants are Floyd County, the members of the Floyd County Board of Tax Assessors in their individual and official capacities, and the members of the Floyd County Merit Board in their official capacities. Presently before the Court are motions for summary judgment filed by all the defendants, a cross-motion for partial summary judgment filed by Lovell, and motions by the defendants to strike various portions of evidence presented by Lovell in support of his motion for partial summary judgment.

The basic facts relevant to the motions before the Court are as follows. In August, 1983, Lovell was terminated by the Floyd County Board of Tax Assessors from his position as Chief Tax Appraiser for Floyd County. The Board of Tax Assessors provided several reasons for their decision, including that Lovell harassed a subordinate and allowed a non-Floyd County employee to take a course at the County's expense. Lovell contends that the actual reason for his dismissal was public outcry, chiefly from large corporations, about his system of appraising personalty called "trending." Lovell appealed his dismissal to the Floyd County Merit Board. After conducting a hearing, the Merit Board found Lovell was not covered by the merit system and dismissed his appeal.

Lovell contends that the following constitutional deprivations occurred: (1) he had a "property interest" in continued employment and was terminated for reasons other than cause, in violation of his substantive due process rights, and was terminated without a pre-termination hearing, in violation of his procedural due process rights; (2) his "liberty interest" was infringed because he was not given a hearing to clear his name after the charges were disseminated to the public; and (3) his first amendment rights were violated because he was fired due to public speeches he gave in support of trending. He seeks backpay, reinstatement to his position with full restoration of benefits, and damages.

### The Summary Judgment Standard

The court's sole function on a motion for summary judgment is to determine whether there is a genuine issue for trial. Fed.R. Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard is essentially the same as the directed verdict standard: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

The moving party bears the initial burden of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When the nonmoving party will have the burden of proof at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and present evidence showing a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553. The evidence presented need not be admissible at trial, but must be depositions, answers to interrogatories, admissions on file, and/or affidavits. *Id.; see* Fed.R.Civ.P. 56(c).

The substantive law identifies which facts are "material." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The Court will identify the relevant substantive law along with its discussion of the specific claims.

### Motion for Summary Judgment Filed by Members of the Floyd County Merit Board

Defendants Sutton, Clemmons, McCorkle, Simmons, and Spivey argue they are entitled to judicial immunity for the actions they took as members of the Floyd County Merit Board, specifically for their finding that Lovell was not covered by the merit system. Lovell concedes that the action of these defendants are cloaked with judicial immunity, but argues the immunity does not extend to his request for injunctive relief in the form of reinstatement to his position. The defendants reply that they lack authority to reinstate Lovell.

Under Georgia law, the board of tax assessors of the county has the authority to hire and terminate tax appraisers. *Spell v. Blalock,* 243 Ga. 459, 461, 254 S.E.2d 842 (1979); *Richmond County v. Jackson,* 234 Ga. 717, 719, 218 S.E.2d 11 (1975). Logically, the board of tax assessors, and not the merit board, also has the authority to reinstate a tax appraiser. Because Lovell states that the only relief he seeks against the merit board members is reinstatement to his position as tax appraiser and the

members cannot reinstate him, summary judgment in favor of these defendants is warranted.

### Motion for Summary Judgment by Floyd County and Members of the Floyd County Board of Tax Assessors and Lovell's Cross-Motion for Partial Summary Judgment

Floyd County and the members of the Floyd County Board of Tax Assessors [1] argue that Lovell was an "at will" employee and therefore did not have a property interest in his position; that Lovell's liberty interest was not infringed and, in any event, that he had an opportunity to clear his name and therefore was not deprived of a liberty interest; and that Lovell's termination did not infringe his first amendment rights. Defendants emphasize that their decision to terminate Lovell was not based on his speeches supporting trending.

Lovell responds that he had a constitutionally protected property interest in his continued employment, and that he was deprived of that interest without due process. He claims he further that his liberty interest was violated because he was not afforded a name clearing hearing. Lastly, he disputes Defendants' claim that he was not terminated in retaliation for exercising his right to freedom of speech. He moves for partial summary judgment that Defendants violated his rights to substantive and procedural due process, his liberty interest right, and his right to freedom of speech under the First Amendment.[2]

### A. Property Interest

"The due process clause provides that the rights to life, liberty, and property cannot be deprived except pursuant to constitutionally adequate procedures." *Hatcher v. Board of Pub. Educ. and Orphanage for Bibb County,* 809 F.2d 1546, 1549 (11th Cir.1987).

---

1. For the remainder of this order, Floyd County and the members of the Board of Tax Assessors will be referred to collectively as the Defendants.

2. As stated, Defendants have filed motions to strike various portions of evidence presented by

Lovell. The Court will rule on these motions where they apply to evidence considered by the Court in resolving the summary judgment motions. The Court reserves ruling on the admissibility of the contested evidence that is not germane to the summary judgment rulings.

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 1549, *quoting Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "Once it is determined that a property right exists, the next question is 'what process is due?'" *Id., citing Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

■■■ A person's entitlement to continued employment, therefore, "is a constitutionally protectable property interest if there are 'rules or mutually explicit understandings that support his claim.'" *Barnett v. Hous. Auth. of Atlanta,* 707 F.2d 1571, 1576 (11th Cir.1983), *citing Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed. 2d 684 (1976) and *White v. Mississippi State Oil and Gas Board,* 650 F.2d 540, 541 (5th Cir. Unit A May 1981). A court must look to state law to determine the legitimacy of a claim to continued employment. *Bishop,* 426 U.S. at 344, 96 S.Ct. at 2077, 48 L.Ed.2d at 690; *see also Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir.1982). Under Georgia law, a property interest arises whenever the public employee can be terminated only for cause. *Brownlee v. Williams,* 233 Ga. 548, 551, 212 S.E.2d 359, 362 ([Ga.] 1975); *see also Ogletree v. Chester,* 682 F.2d 1366, 1370 (11th Cir.1982); *Glenn v. Newman,* 614 F.2d 467, 471 (5th Cir.1980).

*Barnett,* 707 F.2d at 1576. The threshold issue in the instant case, therefore, is whether there were "rules or mutually explicit understandings" between the parties that Lovell could be terminated only for cause. If such rules or understandings existed, then Lovell had a property interest, and the inquiry would be whether Lovell's termination deprived him of his property in violation of substantive and procedural due process.

1. *Did Lovell have a "Property Interest" in Continued Employment?*

■■■ The Floyd County Merit System Act provides that a permanent employee can be dismissed for cause only. The purpose is "to prevent the hiring and firing of individuals based purely on the political whim of those who may be in power." *Floyd County Bd. of Commissioners v. Floyd County Merit System Bd.,* 246 Ga. 44, 268 S.E.2d 651 (Ga.1980). Therefore, if Lovell is a merit employee under the express terms of the Act, then he could be dismissed for cause only, and any "mutually explicit understandings" of the parties would be irrelevant to whether Lovell had a property interest.

Section 2–303 of the Act, which is titled "System Created; Coverage; Exceptions," reads as follows:

(a) From and after the effective date of this act, there is hereby created in Floyd County a merit system to be known as the Floyd County Merit System. All persons who receive salaries or wages in full or in part from Floyd County may be placed under the said merit system [except for enumerated positions.] [3]

(b) Initially included by operation of this law under the Floyd County Merit System shall be all personnel under the juris-

---

3. The enumerated positions are as follows:
 (1) All elective officials.
 (2) Members of appointive or elective boards.
 (3) Members of commissions or authorities.
 (4) The clerk of the board of commissioners.
 (5) The Floyd County Superintendent of Public Works.
 (6) Court reporters for the Floyd County Superior Court and the Floyd City Court.
 (7) Employees of the Floyd County Department of Family and Children Services.
 (8) Employees of the Floyd County Department of Public Health.

(9) Employees of the Floyd County Board of Education.
(10) The chief deputy clerk of the Floyd County Superior Court.
(11) *The chief deputy clerk in the office of the* tax commissioner of Floyd County.
(12) The chief deputy sheriff of Floyd County.
(13) The chief assistant solicitor general in the office of the solicitor general.
(14) Judge of the juvenile court and all employees of said court.
(15) The county attorney.
(16) The comptroller of Floyd County.

diction of the Floyd County Board of Commissioners with the exception of those specifically excluded above, and the employees in the office of the Clerk of the Floyd County Superior Court, the Tax Commissioner of Floyd County, the probate judge of Floyd County, the Solicitor General of Floyd County, and the Sheriff of Floyd County.

The law then prescribes the procedures by which those departments that are under the jurisdiction of the Board of Commissioners but are nevertheless excluded can make an irrevocable election to be covered by the merit system.

The Court reads Section 2–303 as providing three categories of Floyd County employees vis-a-vis merit system coverage: those who may not be merit employees, those who are automatically merit employees, and those who can become merit employees. Tax appraisers are not expressly enumerated in § 2–303(a) as employees who may not be placed under the Act. That subsection does exclude members of appointive and elective boards, however. Therefore, tax appraisers who are on the Floyd County Board of Tax Assessors could not be merit employees. *See* O.C.G.A. § 48–5–290(b); Anthony Aff. at ¶ 2 (members of the Floyd County Board of Tax Assessors are appointed officials).

Subsection (b) provides that all employees under the jurisdiction of the Board of

Commissioners are merit employees except for specific departments. Tax appraisers are under the jurisdiction of the Board of Commissioners: they are hired by the Board of Tax Assessors, *Spell v. Blalock*, 243 Ga. at 461, 254 S.E.2d 842, and the Board of Tax Assessors is appointed by the "county governing authority," *i.e.*, the Board of Commissioners. O.C.G.A. § 48–5–290(b). Therefore, unless tax appraisers fall under one of the exceptions listed in subsection (b), they are merit employees.

The only department that at first glance could include tax appraisers is the office of the Tax Commissioner. A closer examination, however, reveals that they are separate departments. The Tax Commissioner performs the duties of the tax receiver and tax collector, which involves billing for, and collecting, taxes. Georgia Laws 1950 at 2749–50; O.C.G.A. § 48–5–100 *et seq.*; O.C.G.A. § 48–5–120 *et seq.* The Tax Assessors' Office, on the other hand, appraises property. O.C.G.A. § 48–5–263 *et seq.* The tax appraisers, therefore, do not work for the Tax Commissioner.

The record does evince a factual dispute as to whether the parties understood that Lovell was a merit employee.[4] The dispute may have existed because, under Georgia law, a chief tax appraiser in a county employing a full time appraisal staff must be

(17) The county administrator and county guardian.
(18) The chief of the Floyd County Police Department.
(19) The warden of the Floyd County Public Works Camp.
(20) The purchasing agent for Floyd County.
(21) The surplus commodities food director.
(22) The county physician.
(23) The chief deputy clerk of the judge of the probate court of Floyd County.

4. On November 8, 1979, prior to Lovell's employment with Floyd County, then Chief Tax Appraiser Kirton attended a meeting of the Board of Commissioners and discussed placing his employees under the merit system. The Board of Commissioners advised Kirton to write the Merit Board so the Merit Board could study the issue and report back to the Board of Commissioners.

Kirton wrote the Merit Board on November 9, 1979 and asked that his employees be covered

by the merit system. The Merit Board reported back to the Board of Commissioners on February 18, 1980, and recommended including the three tax appraiser positions, the mapper, and the tax appraiser supervisor in the merit system. The relevant minutes of a meeting of the Board of Commissioners on February 20, 1980, reads as follows:

Motion made by Earl Russell seconded by Ronnie Simmons to bring the Tax Appraisers' Office under the Merit System as recommended by the Director.... Motion carried.

Presumably, the Chief Tax Appraiser position was not included because Chief Appraiser Kirton was on the Board of Tax Assessors, and "members of appointive and elective boards" are expressly excluded from merit coverage. Floyd County Merit System Act § 2–303(a)(2). Also, Plaintiff represents that a regulation of the Georgia Department of Revenue provides that "[i]n those counties employing a full-time appraisal staff, the Chief Appraiser shall be a member of the Board of Tax Assessors."

on the Board of Tax Assessors, Ga.Admin. Comp. ch. 560–11–2–.27,[5] and members of the Board of Tax Assessors cannot be merit employees, yet Lovell was hired as the Chief Tax Appraiser and was not on the Board of Tax Assessors.

Nevertheless, the Court finds, as a matter of law, that Lovell, as a tax appraiser who was not on the Board of Tax Assessors, is covered by the express language of the Floyd County Merit System Act. The evidence that Lovell did not have the qualifications to be Chief Appraiser,[6] that some of the parties involved thought he was not a merit employee,[7] and that Lovell was never treated as a merit employee during his employ,[8] are of no moment given the express language of the Act.

As a merit employee, Lovell had a reasonable expectation that he would not be

On March 13, 1981, Brown, the Director of the Merit System, wrote the Merit Board Members concerning recommended changes in the Tax Assessor's Office. In passing, Brown stated that the "Chief Appraiser is a non-merit position."

Lovell was appointed on March 24, 1981 by McCullough, the Floyd County Manager, to be the Chief Tax Appraiser. The hiring document was not signed by the Merit System Director, although a place for his signature is shown.

On December 28, 1982, following more discussions concerning Lovell's coverage under the Merit System, Brown, the Director of the Floyd County Merit System, who had stated earlier that the Chief Tax Appraiser was a "non-merit position," wrote to the Merit Board Members that

> [r]eviewing the Floyd County Code Section 2–302 through 2–303 reveals that Mr. Lovell's position [as] Chief Tax Appraiser, is not exempt from Merit System coverage. Sam Kirton the previous incumbent was not eligible for the Merit System because he was also a member of the Board of Tax Assessors. Mr. Lovell is not; and therefore, should be covered by the Merit System.

In January, 1983, a bill was submitted to the legislature proposing that the Chief Tax Assessor of Floyd County be excluded from the merit system. State Representative Adams testified in his deposition that the bill was submitted because "there was some question as to the chief tax appraiser, whether that position was under the merit system or was not under the merit system." (Adams Aff. at 4–5). In any event, the bill did not pass.

The record contains no further evidence of a decision on the status of Lovell's coverage until Lovell appealed his dismissal by the Board of Tax Assessors to the Merit Board in September, 1983. The Board of Tax Assessors moved to dismiss on the ground that Lovell never acquired the qualifications of his position and therefore could not be a merit employee. They argued, among other things, that Georgia law requires the Chief Tax Appraiser for Floyd County to hold an Appraiser IV certificate, see O.C.G.A. §§ 48–5–262(c)(6), 48–5–262(c)(5), and Lovell held an Appraiser III certificate only. One of the terms of Lovell's employment was that "upon completion of certification as an Appraiser IV, Mr. Lovell's salary shall be increased to $27,500.00." Lovell never completed certification as an Appraiser IV.

After holding a hearing, the Merit Board found that Lovell "is not and never has had coverage under the Merit System and therefore is not entitled to the benefit of the Regulations of the Floyd County Merit System." The Merit Board did not articulate the basis for its conclusion that Lovell was not a merit employee.

After Lovell was terminated, he was replaced by John Mansell as Chief Tax Appraiser, and merit coverage was extended to him. Mansell holds an Appraiser IV certificate. The Court can only assume that Mansell was not on the Board of Tax Assessors and therefore could have been extended merit system coverage.

At the same meeting where Mansell was declared to be a merit employee, a decision to include the other tax appraisers "died for lack of a second." Even if the Floyd County officials did not believe that the merit system act covered tax appraisers explicitly, in 1981, they decided to include the Tax Assessors' Office except for the Chief Tax Appraiser. In 1983, they revisited the issue and decided to include the Chief Tax Appraiser but did not vote on the status of the remaining tax appraisers.

As stated in the text, *infra,* the confusion concerning Lovell's status under the merit system may have been due to the fact that Georgia law requires the Chief Appraiser in Floyd County to be a member of the Board of Tax Assessors and those members cannot be merit employees, yet Lovell was not a member of the Board of Tax Assessors.

5. A Georgia Department of Revenue regulation provides that "[i]n all counties employing a full-time appraisal staff, the Chief Appraiser shall be a member of the Board of Tax Assessors. Provided, however, that this Regulation shall not be applicable until such time as a vacancy shall exist on the Board of Tax Assessors." Ga.Admin.Comp. ch. 560–11–2–.27.

6. See footnote 4, *supra.*

7. See footnote 4, *supra.*

8. The undisputed evidence shows that Lovell was never treated as a merit employee during

dismissed except for cause. He consequently had a constitutionally protected property interest in continued employment, and the Court must examine the evidence relative to Lovell's substantive and procedural due process claims.

### 2. *Substantive Due Process*

■ The substantive due process inquiry is whether Defendants' deprivation of Lovell's property interest was by "an improper motive and by means that [are] pretextual, arbitrary and capricious." *Hatcher*, 809 F.2d at 1555, *quoting, Barnett*, 707 F.2d at 1577.

Defendants contend, with abundant evidence in support, that Lovell was terminated for the reasons articulated in his letter of dismissal, which included harassment of a subordinate, misuse of county funds, and general low morale in the Tax Assessors' Office. Lovell, on the other hand, disputes the accuracy of the charges, and presents the following evidence showing he was terminated due to his position on trending: the express reasons for his dismissal involved events that had occurred months beforehand; Floyd County Commissioner Smith stated in a deposition that Lovell was terminated due to the furor over Lovell's support of trending;[9] and trending was discontinued as a method of assessing personalty soon after Lovell was dismissed. Defendants respond with evidence showing that Lovell's public statements were not a reason for their decision to terminate him because they in fact supported his position on trending.

Defendants present strong reasons for a trier of fact to find that Lovell was fired for appropriate reasons. The factual issue of the basis for Lovell's dismissal, however, is in dispute and cannot be resolved by the Court on a motion for summary judgment. The dispute is material in terms of Lovell's substantive due process claim because a dismissal based on Lovell's position on trending may have been improper under the Merit Act and, as discussed *infra*, under the first amendment. *See Hatcher*, 809 F.2d at 1555 (substantive due process is violated if one's dismissal is for an improper motive). Summary judgment for both parties on Lovell's substantive due process claim will be denied.

### 3. *Procedural Due Process*

■ Procedural due process required that a hearing be held prior to Lovell's termination. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433–34, 102 S.Ct. 1148, 1156–57, 71 L.Ed.2d 265 (1982) ("some form of hearing" is required before the owner is finally deprived of a protected property interest). No hearing was afforded prior to Lovell's dismissal.[10] Defendants contend, however, that Lovell did not seek review of the Merit Board's decision by way of certiorari, as permitted by Georgia. *See* O.C.G.A. § 5-4-1 *et seq.* They contend that state remedies permit Lovell to pursue his due process claims adequately and precludes his procedural due process claim. Lovell responds that exhaustion of state remedies is not required in a civil rights suit.

Defendants' argument is based on a line of cases that began with *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt*, a prisoner alleged that a state employee negligently lost a hobby kit the prisoner had ordered. The Supreme

his tenure with Floyd County. (*See* Carter Affidavit).

**9.** Defendants move to strike Smith's statements because, they claim, he lacked personal knowledge. A careful review of the deposition reveals that, although Smith lacked personal knowledge that Lovell had spoken publicly on trending, as a county commissioner, Smith did have personal knowledge of the reasons for Lovell's termination. Therefore, although Smith's statement might not be admissible to prove that Lovell in fact spoke openly about trending, it is admissi-

ble to show the reason for Lovell's termination. Defendant's motion to strike Smith's statement will therefore be denied.

**10.** In his deposition, Lovell did state that Defendants Fricks and Perkins, members of the Board of Tax Assessors, did offer to talk with Lovell, but at the same time informed him that the decision was final. (Lovell Dep. at 171). Although the offer may have been made prior to Lovell's termination, there is no evidence that the nature of the "discussion" would have satisfied procedural due process.

Court ruled that the availability of a post-deprivation remedy, to-wit, a tort action against the State, precluded the prisoner's claim that he was denied due process.[11]

In *Logan,* the Supreme Court carved out an exception to the *Parratt* rule when one claims procedural due process was denied pursuant to an "established state procedure." Logan had filed an employment discrimination complaint with an administrative agency in Illinois. Under Illinois law, his complaint had to be processed by the administrative agency; if Logan was not satisfied with the result, he could seek judicial review of the administrative decision. In his case, the agency did not convene a factfinding conference within the requisite period, and the agency was thereby deprived of jurisdiction to consider Logan's charge.

The *Logan* Court found that, in contrast to the situation in *Parratt,* due process had been implicated by a state procedure and not by a "random and unauthorized act by a state employee." 455 U.S. at 435–36, 102 S.Ct. at 1157–58. The Court continued: "absent 'the necessity of quick action by the State or the impracticality of providing any predeprivation process,' a postdeprivation hearing here would be constitutionally inadequate." *Id.* at 436, 102 S.Ct. at 1158,

*quoting Parratt v. Taylor,* 451 U.S. at 539, 101 S.Ct. at 1915.

In *Fetner v. City of Roanoke,* 813 F.2d 1183 (11th Cir.1987), the Eleventh Circuit applied the *Logan* exception to a situation strikingly similar to the case at bar. Fetner, a public employee, alleged *inter alia* that his dismissal without prior written notice or a hearing violated his procedural due process rights. The Court cited *Logan* for the proposition that "[p]ost-deprivation remedies do not provide due process if pre-deprivation remedies are practicable." *Id.* at 1186. The Court found Fetner's procedural due process claim was not barred under *Parratt,* notwithstanding the availability of a post-deprivation remedy, because Fetner was allegedly denied due process pursuant to an established state procedure and a pre-deprivation procedure was practicable.

*Fetner's* holding, that "*Parratt* does not apply to procedural due process violations when the state is in the position to provide predeprivation process," has been embraced by a majority of the Eleventh Circuit, in *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 801 (11th Cir.1988) (*en banc*).[12] The Court continued: "[i]n the present case, predeprivation procedures were practicable and thus postdeprivation remedies cannot provide due process." *Id.*[13]

---

**11.** *Parratt* has been overruled to the extent that mere negligence does not rise to the level of a constitutional violation. *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

**12.** Although the *Burch* opinion, drafted by Judge Johnson, was a plurality, Judge Clark joined the reasoning, 840 F.2d at 804, and the five dissenting judges wrote that "[t]he controlling inquiry under *Parratt* ... is whether the *State* could have anticipated acts of deprivation such that it would have been in a position to provide predeprivation process." 840 F.2d at 812 (emphasis in original). Therefore, 7 of the 13 judges hearing the case concurred with the rule that *Parratt* does not preclude procedural due process claims based on the availability of a post-deprivation remedy when the state could have provided a pre-deprivation process.

**13.** Defendants cite *Lee v. Hutson,* 810 F.2d 1030 (11th Cir.1987), where, prior to *Burch* and *Fetner,* the Eleventh Circuit rendered a different ruling. Lee was terminated from a tenured

position and received a post-deprivation hearing before an administrative board. In her federal complaint she alleged, *inter alia,* that she was denied due process because she was not given a pre-deprivation hearing. Without discussing *Logan* and the difference between pre-deprivation and post-deprivation remedies, the Court summarily found that the post-deprivation "certiorari procedure available ... does provide an adequate remedy." It reasoned that Lee's claims, all of which presented procedural due process issues, were therefore barred by *Parratt.*

The Court finds it difficult to reconcile *Lee* with *Fetner* and *Burch.* In both *Lee* and *Fetner,* terminated employees with property interests in their employments asserted that they were denied procedural due process when they were not given a pre-termination hearing. In *Lee,* the post-deprivation procedure was deemed adequate, whereas in *Fetner* it was deemed inadequate because a pre-deprivation hearing could have been provided.

*Lee* was decided prior to the *en banc* opinion in *Burch,* where a majority of the judges agreed with the *Fetner* Court that post-deprivation pro-

The Court finds that the availability of a post-deprivation remedy does not bar Lovell's procedural due process claim. First, the hearing before the Merit Board (the post-deprivation procedure) was held solely to determine whether Lovell was a merit employee and not whether he was properly fired. Second, and more significantly, a predeprivation hearing was practicable in Lovell's case because the Defendants knew in advance that they intended to terminate him.[14] The post-deprivation procedure of appealing the Merit Board's decision to the Superior Court by means of certiorari would not, therefore, provide due process. *Burch v. Apalachee Community Mental Health Services, Inc.*, 840 F.2d at 801; *Fetner v. City of Roanoke*, 813 F.2d at 1186.

On the undisputed facts, the Court finds as a matter of law that Defendants violated Lovell's procedural due process right to a hearing prior to his termination. Defendants' motion for summary judgment on this claim will be denied, and Lovell's cross-motion for summary judgment on this claim will be granted.

### B. *Liberty Interest*

 "[T]he dismissal of a government employee accompanied by a 'charge against him that might seriously damage his stand-ing and associations in the community' ... trigger[s] the due process right to a hearing at which the employee could refute the charges and publicly clear his name." *Owen v. City of Independence*, 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980), *quoting Roth*, 408 U.S. at 573, 92 S.Ct. at 2707; *see also Campbell v. Pierce County, Georgia*, 741 F.2d 1342, 1344 (11th Cir.1984) (right to hearing applies to "at will" employees), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985).

To show a liberty interest deprivation, a plaintiff must establish that the charges were "substantially false," *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) [15], and "stigmatized him and foreclosed him from other employment opportunities." *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. Nov.1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982), *citing Codd* and *Paul v. Davis*, 424 U.S. 693, 706, 96 S.Ct. 1155, 1163, 47 L.Ed.2d 405 (1976).[16] Whether a plaintiff has been "stigmatized" by the government's charges is a factual issue. *See id.* at 626, 97 S.Ct. at 883 (finding of "no stigma" was "clearly erroneous").

 If a hearing is required, it "need not take place prior to [the employee's] termi-

---

cedures are inadequate if a predeprivation procedure was practicable. Further, *Lee* did not cite or apply that rule. The Court therefore concludes that it is bound by the rules articulated in *Burch* and *Fetner*. To the extent that *Lee* would prescribe a contrary result, *Lee* is not controlling.

14. For the same reason, Lovell's deprivation was pursuant to an established state procedure and was not "a random and unauthorized act."

15. Lovell argues that he does not need to show that the charges were "substantially false," and cites *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), for the proposition that deprivations of procedural due process are actionable whether or not there is merit to the underlying assertions. The *Carey* Court did state that "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed." *Id.* at 266, 98 S.Ct. at 1066–67.

*Carey* is distinguishable for two reasons. First, the issue in *Carey* was the amount of damages that can be awarded for a procedural due process deprivation. In contrast, the issue in this case concerns the *elements* of a procedural due process claim when one has been terminated as a public employee. Second, *Carey* did not present a situation where the plaintiff was asserting a need for a name clearing hearing. *Codd*, on the other hand, is on all fours with the instant facts. The Court must therefore follow the rule announced in *Codd* relative to the elements of a claim for a name clearing hearing.

16. Although the *Owen* Court stated that one's liberty interest is implicated when the government's charge "might" damage one's reputation, cases applying the rule require that the charge stigmatize the employee in fact. *See Campbell*, 741 F.2d at 1344 ("damage [to one's reputation] sustained in connection with a termination of [government] employment ... may give rise to a claim for deprivation of liberty actionable under Section 1983"); *White*, 660 F.2d 680 at 684; *Velger v. Cawley*, 525 F.2d 334 (2d Cir. 1975), *rev'd on other grounds*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

nation or to the publication of related information adverse to his interests." *Campbell*, 741 F.2d at 1345. It must, however, provide the employee "an opportunity 'to support his allegations by argument however brief, and, if need be, by proof, however informal.'" *Id., quoting Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 n. 17, 98 S.Ct. 1554, 1564 n. 17, 56 L.Ed.2d 30 (1978).

▬ Lovell disputes the veracity of two of the stated charges for his dismissal, to-wit, that he harassed a subordinate and that he arranged for a non-Floyd County employee to take a course at the County's expense. He has also presented evidence showing that the charges were aired by the news media in the Floyd County area, although the parties dispute whether Defendants or Lovell himself disseminated the information to the media.

Despite these showings, summary judgment for Defendants is warranted on the liberty interest issue because Lovell has not presented evidence showing that he was stigmatized by the charges and foreclosed from employment opportunities. In his affidavit, Lovell does state that "[t]he derogatory information disseminated ... has stigmatized me in the community and harmed my reputation and prevented employment opportunities in my chosen profession." (Lovell Aff., ¶ 50). However, as Defendants correctly argue in a motion to strike portions of Lovell's affidavit, paragraph 50 is conclusory. Lovell does not specify elsewhere in his affidavit the harm to his reputation or the employment opportunities that were foreclosed as a result of the charges. Conclusory statements in an affidavit are insufficient to avoid summary judgment. *Broadway v. City of Montgomery*, 530 F.2d 657, 660 (5th Cir.1976). Defendants' motion to strike paragraph 50 will therefore be granted.

In his deposition, Lovell testified that he was hospitalized after his termination, and that he started applying for positions "immediately" upon his recovery. He spoke to public officials and to national corporations that dealt in reassessment work and interviewed with insurance companies and with the State of Alabama. He said that he was offered a position as Chief Tax Appraiser for Tift County, but chose not to relocate for financial reasons.[17] He was rejected for a position with Henry County, but he did not inquire why.

The only explanation Lovell provided for his difficulties in obtaining employment was that "[y]ou know, being fired from a job, it's sort of hard to explain." (Lovell Dep. at 131). He testified further that he started a private appraising business fourteen months following his dismissal, and that his clients have included counties in the vicinity of Floyd County. (*Id.* at 4–5, 55–64).

As the cases discussed above explain, Lovell must establish more than that his dismissal damaged him—he must show that his dismissal was coupled with charges that "stigmatized him and foreclosed him from other employment opportunities." Objectively speaking, the charges lodged against Lovell could do much harm to his marketability. However, whether or not the charges are true and whether or not they were disseminated to the public by the Defendants, Lovell has not presented evidence from which a jury could find that the charges themselves actually damaged his employment opportunities. For example, there is no evidence that employers failed to hire him because they heard that he had harassed a subordinate or had misused county funds. Summary judgment in favor of Defendants is therefore warranted on the liberty interest issue.

## C. *Freedom of Speech*

▬ As stated *supra*, Lovell contends that the actual reason for his dismissal was the public outcry over his support for a method of appraising property known as trending, and that his first amendment right to freedom of speech was thereby infringed.

Public employment may not be conditioned upon requirements that violate constitutionally protected interests. *Per-*

---

**17.** Floyd County is located in northwest Georgia, and Tift County is located in south Georgia.

ry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). A public employee's protection is not absolute, however. The court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. Because of the variety of situations in which critical statements may be the basis for discharge of a public employee, there is no general standard for determining in whose favor the balance is struck. Rather, the courts have developed standards which distinguish two types of cases—those involving employee expression and those involving "raw political patronage."

*Terry v. Cook*, 866 F.2d 373, 375 (11th Cir.1989). If the discharge involves "raw political patronage," *i.e.*, one's allegiance to a particular political party or candidate, then the discharge is constitutional *if* the employee possessed a confidential, policymaking position and his political allegiance "would undermine rather than promote effective job performance." *Id.* at 376, *citing Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).[18]

However, if the discharge concerned employee expression, then "the court must determine if [the] employee [spoke] about matters of public concern and balance that interest against the employer's interest in efficiency and discipline." *Terry*, 866 F.2d at 376, *citing Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If the expressions were of public concern, then the plaintiff must show that "his speech or conduct was a substantial or motivating factor in the decision [to fire] him" and that his interest in free speech outweighs the government's interest.

"Once the plaintiff succeeds in meeting his burden, the burden of proof shifts to the defendant to show, by a preponderance of the evidence, 'that it would have reached the same decision to discipline the employee in the absence of the protected speech.'" *Leonard v. City of Columbus*, 705 F.2d 1299, 1303–04 (11th Cir.1983), *cert. denied*, 468 U.S. 1204, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984), *citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Contrary to Defendants' contention, the instant case is not one of "raw political patronage"—there is no evidence that Lovell's allegiance to a political party or candidate was a basis for his dismissal. *Cf. Ray v. City of Leeds*, 837 F.2d 1542 (11th Cir.1988); *Stegmaier v. Trammel*, 597 F.2d 1027 (5th Cir.1979). Therefore, whether Lovell was a confidential or policymaking employee is of no consequence. The issues, rather, are whether Lovell's speeches on trending were of "public concern," whether his speeches were a substantial or motivating factor in his dismissal, and whether his right to express his opinion outweighs a governmental interest in efficiency and discipline. *See Terry*, 866 F.2d at 376; *Leonard*, 705 F.2d at 1303. Should he meet that burden, Defendants would then have to prove that Lovell would have been terminated even in the absence of his speeches. *Leonard v. City of Columbus*, 705 F.2d at 1304.

First, the Court rejects Defendants' contention that Lovell's speeches on trending were not matters of public concern. Lovell spoke at civic clubs, before the state legislature, and at other public forums about a method by which a municipality can appraise personal property for the collection of taxes. A more public expression of a matter of more public concern could hardly be imagined.

Second, as discussed above under the substantive due process analysis, the factu-

---

**18.** The Court rejects Defendants' position that a confidential, policymaking employee can be dis-

missed for "whatever reason."

al issue of whether Lovell was terminated due to his speeches on trending or due to the charges articulated by Defendants is disputed. Third, if Lovell was terminated for his speeches, then a governmental interest in efficiency and discipline is not evident. As Defendants represent, they supported trending and even personally escorted Lovell to speaking engagements. Lovell's speeches, therefore, would not have interrupted the efficiency of the office and would not call for discipline.

In sum, under Defendants' scenario, Lovell was not terminated in retaliation for his public speeches supporting trending and cannot show a first amendment violation. Under Lovell's scenario, however, Lovell was terminated in substantial part for those speeches, and his right to freedom of speech may have been thereby infringed. Summary judgment for either party cannot issue on Lovell's first amendment claim due to the *bona fide* factual dispute concerning the motivation for the dismissal.

### D. *Qualified immunity*

The individual members of the Floyd County Board of Tax Assessors argue they are entitled to qualified immunity from personal liability for Lovell's claims. Qualified immunity insulates government officials from personal liability when performing discretionary functions

> insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.

*Dartland v. Metropolitan Dade County,* 866 F.2d 1321 (11th Cir.1989), *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

#### 1. *Property Interest Claims*

■ Although the Court has found that Lovell was a merit employee under the express terms of the Merit Act, as dis-

cussed *supra,* there was much confusion and disagreement by the Board of Commissioners and the Merit Board as to whether Lovell was a merit employee. Given the unsettled opinions of those high ranking Floyd County officials, the Court finds that the members of the Board of Tax Assessors would not have reasonably known that Lovell had a protected property interest in continued employment. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (to preclude qualified immunity, "[t]he contours of the [plaintiff's legal] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right").

Therefore, even if the members of the Board of Tax Assessors violated Lovell's procedural and substantive due process rights by dismissing Lovell, they are entitled to qualified immunity in their individual capacities for any liability flowing from those constitutional deprivations. Summary judgment in favor of those defendants in their individual capacities will issue on Lovell's property claims.

#### 2. *Liberty Interest Claim*

Summary judgment in favor of Defendants, in both their individual and official capacities, is warranted on the merits of Lovell's liberty interest claim, as discussed *supra,* and the Court need not reach the qualified immunity issue.

#### 3. *First Amendment Claim*

■ The Eleventh Circuit has spoken at length on qualified immunity in the area of an employee's freedom of speech. In *Dartland,* the Court explained that "because of the case-by-case approach" of balancing freedom of speech interests against the state's interest,

> "[t]here will rarely be a basis for [an] *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." *Noyola v. Texas Dep't of Human Resources,* 846 F.2d 1021, 1025 (5th Cir.1983). Because no bright-line standard puts the reasonable public employer

on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful.

*Dartland*, 866 F.2d at 1323.

Although no bright-line rule exists, the record, as discussed *supra*, presents a factual dispute concerning whether Lovell was terminated for supporting trending. If he was terminated for that reason, then a governmental interest in efficiency and discipline is not apparent. Summary judgment on Lovell's first amendment claim based on the individual defendant's qualified immunity is not warranted because a jury could find that Defendants violated Lovell's clearly established first amendment rights.

### Conclusions

Lovell had a property interest in continued employment, and his termination, therefore, needed to satisfy substantive and procedural due process concerns. The absence of a pretermination hearing violated Lovell's procedural due process rights and a factual dispute as to the motive behind his dismissal precludes summary judgment for either party on Lovell's substantive due process rights.

Defendants did not violate Lovell's liberty interest because the evidence does not support Lovell's assertion that he was stigmatized by the charges that accompanied his dismissal. Additionally, summary judgment cannot issue on Lovell's freedom of speech claim due to the factual dispute about the reason Lovell was fired.

The members of the Floyd County Merit Board are entitled to summary judgment because they lack the authority to reinstate Lovell to his position. Lastly, the members of the Floyd County Board of Tax Assessors have immunity from liability in their individual capacities on Lovell's property interest claims.

ACCORDINGLY, the motion for summary judgment filed by Defendants Sutton, Clemmons, McCorkle, Simmons, and Spivey is GRANTED. The motion for summary judgment filed by Defendant Floyd County, is GRANTED on the liberty interest claim and DENIED on the property and first amendment claims. The motion for summary judgment by Defendants Perkins, Anthony, and Fricks is GRANTED on the liberty interest claim, GRANTED, in their individual capacities only, on the property interest claim, and DENIED on the freedom of speech claim.

Lovell's cross-motion for summary judgment is GRANTED on the procedural due process claim and DENIED on all other claims. Defendants' motion to strike portions of Lovell's affidavit is GRANTED IN PART. Defendants' motion to strike portions of Smith's deposition is DENIED. Rulings on the remaining motions, including Defendants' motion to strike portions of Brown's deposition, are RESERVED.

IT IS SO ORDERED.