**ENTERPRISE FIRE FIGHTERS' ASSOCIATION, etc., et al., Plaintiffs,**

v.

**Billy Joe WATSON, et al., Defendants.**

**Civ. A. No. 91–T–912–S.**

United States District Court, M.D. Alabama, Southern Division.

June 20, 1994.

Stephen Roger Glassroth, Glassroth & Associates, Montgomery, AL, for plaintiffs Enterprise Fire Fighters Ass'n Local 3269, Ricky L. James, Russell W. Cutts, Rodney O. Davis.

Mark Peterson, J. Allen Schreiber, Lloyd, Schreiber & Gray, P.C., Birmingham, AL, Joseph Stafford Pittman, Jr., Joe S. Pittman, Pittman & Pittman, Enterprise, AL, for defendants Billy Joe Watson, individually and

in his official capacity as chief of the Enterprise Fire Dept., Herbert Ray Cooper, individually and in his official capacity as the assistant chief of the Enterprise Fire Dept., Jacquelyn Thompson, individually and in her official capacity as the mayor of the City of Enterprise, AL, William Cooper, Herbert Gannon, Sr., Johnny Henderson, Jim McQueen, Max Ellis, individually and in their official capacity as members of the Enterprise City Council, City of Enterprise, AL.

## *MEMORANDUM OPINION*

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff Rodney O. Davis challenges his termination as a firefighter for the City of Enterprise, Alabama. Along with other plaintiffs—other individual firefighters and the Enterprise Fire Fighters' Association—Davis initially asserted that the defendants—the City of Enterprise, its Mayor and City Council members, and officials of its fire department—retaliated against those firefighters who participated in labor union activities. The plaintiffs' complaint alleged violations of their rights to freedom of association and due process of law under the first and fourteenth amendments to the United States Constitution, as enforced by 42 U.S.C.A. § 1983, and their right to participate in labor union activities without penalty, as protected by 1975 Ala.Code § 11–43–143. The parties settled the freedom-of-association and state-law claims and the court dismissed those claims with prejudice on June 4, 1993.

Pending before the court is Davis's due process claim in which he alleges that his due process rights were violated because: (1) the defendants terminated him in retaliation for his union activities; and (2) he was terminated without the benefit of prior notice and a hearing. For the reasons set forth below, the court concludes that Davis's procedural, but not substantive, due process rights have been violated, entitling him to an award of compensatory damages.

## I. BACKGROUND

Having resolved all issues except Davis's due process claim, the parties agreed to submit this case to the court on the following stipulated facts and supporting evidentiary materials.

Davis began working as a firefighter for the City of Enterprise on April 21, 1987. At the time of his termination on April 7, 1990, he was considered a permanent employee. The work schedule for him, as well as other Enterprise firefighters, was a 24-hour shift: continuous duty from 7:00 a.m. one day until 7:00 a.m. the following day. He would then be off-duty for the next two days and return to work at 7:00 a.m. on the fourth day.

In April 1990, in addition to his employment as a firefighter, Davis was also employed as an electrical contractor with Cox & Cox in Clio, Alabama. This additional employment violated no rule or regulation of the City of Enterprise. The written personnel policies of the City of Enterprise, however, provided the following guidelines for "outside employment":

> "[N]o employee shall engage in any other employment, or any private business, or in the conduct of a profession, during the hours for which he is employed to work for the City, or outside such hours in a manner or to an extent that affects or is deemed likely to affect his usefulness as an employee of the City. Toward this end, all outside employment must be reported to the employee's department head."

*See* City of Enterprise, Alabama Affirmative Action Plan: Personnel Policies, Procedures, Pay and Benefits, at 16.

On March 29, 1990, Davis was off-duty and was due back at work as a firefighter at 7:00 a.m. on April 1. At approximately 6:30 a.m. on April 1, he telephoned his supervisor, Captain Herring, and informed him that he was sick and could not come to work.[1] Specifically, Davis reported that he had hurt his back. He does not contend that he injured his back while working for the City of Enterprise.

---

1. Whenever a firefighter is on sick leave, he receives the same pay as if he or she were on duty.

On April 3, Davis went to see Dr. B.A. Santa Rossa and obtained a written excuse stating that he would be unable to return to work until April 7. On the evening of April 3, Davis reported to Captain Herring that, according to Dr. Santa Rossa, he had torn a muscle in his back and would not be able to return to work until April 7. The City of Enterprise reports that it is common practice for an injured firefighter to be placed on light duty, excluding firefighting, when so ordered by the firefighter's treating physician.

On April 4, Fire Chief Billy Joe Watson found Davis on an electrical job site located in Clio, Alabama. Chief Watson reports that he observed Davis performing electrical work; Davis reports that he was only on the job site giving directions to his employee and was not working. On April 6, Davis was notified in writing by Chief Watson that he was terminated from his employment as a firefighter with the City of Enterprise effective April 7. The reason stated in the notice of termination was that Davis "willfully gave a false statement to [his] supervisor and was in violation of City regulations." Under the City of Enterprise's personnel policies, an employee may indeed be dismissed if he or she is "guilty" of one of a number of violations, including "[w]illfully giving false statements to supervisors, officials, the public or Boards." *See* Affirmative Action Plan, at 7–9.

Along with the notice of termination, Davis was provided a copy of the post-termination procedures to be followed to contest his termination. These procedures provide that "[a]ny permanent status career employee who has been ... dismissed ... shall have the right of appeal to the Mayor." The procedures envision an appeal to both the Mayor and the City Council as follows:

"Hearings shall be conducted informally and technical rules of evidence shall not apply.... A majority vote of the members of the City Council shall be final.... The affected employee shall be promptly notified in writing by the Administrative Officer of the final determination with respect to the disciplinary action."

*See* Affirmative Action Plan, at 9. An employee may be assisted during the appeal by counsel or another representative of his or her choosing. The procedures also provide for backpay and reinstatement as follows:

"In the event the City Council finds that the disciplinary action was not well founded, the affected employee shall be paid in full for such portion of time as he was unjustly suspended, reduced in pay or removed. In the event that the disciplinary action taken was removal or reduction in pay, the employee affected shall be restored to his former position in the same class and pay status."

*See* Affirmative Action Plan, at 10.

On April 10, Davis filed a written appeal with then-Mayor Jacquelyn Thompson. On April 12, he provided a letter from Dr. Santa Rossa to Mayor Thompson. In that letter, Dr. Santa Rossa verified that he saw Davis on April 3, that Davis complained of a painful back at that time, and that Davis in fact had "spasm" in the lower back as well as a "latisuos strain." Dr. Santa Rossa reported to Mayor Thompson that he instructed Davis to "dessist [sic] from firefighting for 4–5 days, which at that time, he could expect to have recovered enough to return to work." On April 16, Davis was afforded a hearing before Mayor Thompson. Davis was represented at the hearing by Clarence Perez, a representative from the International Association of Firefighters, by Ricky James, president of the Enterprise Fire Fighters' Association, and by himself. Davis was given a full opportunity to present his case to Mayor Thompson, and, in fact, did so. Mayor Thompson nonetheless upheld Chief Watson's termination of Davis. Under the personnel policies, Mayor Thompson had the authority to reinstate Davis or impose disciplinary measures other than termination.

On April 26, Davis then appeared before the Enterprise City Council to appeal his termination for a second time. Again, he was assisted in his appeal by Perez and James, and presented his case to his satisfaction. Under the City of Enterprise's personnel policies, the Council could have found that the termination was not well-founded and could have reversed the termination or

imposed lesser sanctions. After reviewing all of the evidence relating to Davis's termination and appeal, the Council upheld Davis's termination as a firefighter with the City of Enterprise. The City Council informed Davis of its decision by letter dated April 26.

## II. DUE PROCESS CLAIM

The due process clause of the fourteenth amendment to the United States Constitution provides that the State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Davis asserts that he had a property right in his continued employment as a firefighter

■ The law is well established that, if Davis had such a right, he could not be deprived of it by the City of Enterprise without due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561–62, 56 L.Ed.2d 30 (1978); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. In this case, the defendants admit that Davis was a permanent employee of the City of Enterprise. As such, Davis could be terminated only "for cause," that is, on the basis of certain enumerated reasons. *See* Affirmative Action Plan, at 7, 8–9. Davis's status as a permanent employee "plainly supports the conclusion ... that [he] possessed property rights in continued employment." *Loudermill*, 470 U.S. at 539, 105 S.Ct. at 1491.

■ As the Eleventh Circuit Court of Appeals has recently explained in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994) (en banc), the due process clause "provides two different kinds of constitutional protection: procedural due process and substantive process." *Id.* at 1555 (citing *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)). "A violation of either of these kinds of protection may form the basis for a suit." *Id.* Although Davis does not specify under which component of the due process clause he is proceeding, it appears from his allegations that he is attempting to invoke both components. The court will, therefore, analyze Davis's claims under both the substantive and procedural components of the due process clause.

### A. *Substantive Due Process*

■ In what the court construes as Davis's substantive due process claim, Davis complains that his termination for giving a false statement to his employer was "pretextual." Davis asserts that the "real reason" for his termination was his employer's desire to retaliate against him for his participation in labor union activities.

Until recently, the law of this circuit was that a public employee had a valid cause of action for pretextual termination under the substantive component of the due process clause. *See, e.g., Adams v. Sewell*, 946 F.2d 757, 766 (11th Cir.1991). In *McKinney*, however, the Eleventh Circuit Court of Appeals, sitting en banc, held such a cause of action to be invalid. The court overruled its prior decisions—finding them to be inconsistent with Supreme Court teachings on the subject—to the extent those decisions "granted pretextually terminated employees section 1983 causes of action premised on substantive due process violations." *McKinney*, 20 F.3d at 1560. The court concluded in *McKinney* that "an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component." *Id.* "Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution," the court continued, "they do not enjoy substantive due process protection." *Id.*[2]

---

**2.** The court limited its holding to non-legislative employment decisions. Non-legislative decisions, such as employment terminations, apply to a limited number of persons. Legislative decisions, such as "laws and broad-ranging executive regulations," by contrast, "apply to a larger segment of—if not all of—society." *McKinney*, 20 F.3d at 1557 n. 9. Because it cannot seriously be contended in this case that Davis's termi-

This court is bound by *McKinney* and cannot, therefore, grant Davis any relief for his alleged violation of the substantive component of the due process clause.[3] However, although this court must conclude under *McKinney* that Davis's "state-created property right is [not] deserving of substantive due process protection," 20 F.3d at 1561, applicable Supreme Court precedent—and *McKinney* itself—continue to safeguard the property rights of public employees with certain procedural protections. It is to these procedural protections that the court now turns.

### B. *Procedural Due Process*

■ Under the procedural component of the due process clause, once a court finds that a person has been deprived of a property interest, "the question remains what process· is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Supreme Court has made clear that, although the preliminary question of whether a property right exists may be one of state law, the question of what procedures must be provided for the deprivation of such a property right is one of federal constitutional law. *See Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1493. That is,

"[the] right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'"

*Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in result)). The public employee need not accept the "bitter with the sweet." *Id.* at 541, 105 S.Ct. at 1493. Thus, the question for the court in this case is not whether Davis's termination was in compliance with the written personnel procedures of the City of Enterprise, but whether those procedures satisfy constitutional procedural due process minima.

Davis argues that his procedural due process rights were violated because the City of Enterprise terminated his employment without providing him prior notice and an opportunity to respond—that is, a pretermination hearing. Davis's argument is well supported by Supreme Court precedent. Indeed, the Court wrote in 1985 in *Loudermill* that the rule that due process requires a hearing prior to terminating a public employee "has been settled for some time now." *Loudermill*, 470 U.S. at 542, 105 S.Ct. 1487 (citing *Davis v. Scherer*, 468 U.S. 183, 192 n. 10, 104 S.Ct. 3012, 3018 n. 10, 82 L.Ed.2d 139 (1984)).

The *Loudermill* Court explained that an "essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)). The Court described " 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' " *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original)). The Court acknowledged that due process requirements for the deprivation of certain property interests less "significant" than an individual's livelihood might be satisfied by a postdeprivation hearing. *Loudermill*, 470 U.S. at 542 & n. 7, 105 S.Ct. at 1493 & n. 7 (citing cases). The Court made clear, however, that a postdeprivation hearing could not satisfy due process requirements in the public employment context.

■ Although the pretermination hearing "need not be elaborate," *id.* at 545, 105 S.Ct. at 1494, due process requires " 'some kind of a hearing' prior to the dis-

---

nation was a legislative decision, *McKinney's* holding is fully applicable.

**3.** Although the Eleventh Circuit's decision in *McKinney* postdated the filing of the complaint in this case, the court specifically held that its deci-

sion "must be applied retroactively" to all cases currently pending in the courts. 20 F.3d at 1566. Thus, this court may not analyze Davis's claim under the law existing at the time of the allegedly pretextual termination.

charge of an employee who has a constitutionally protected property interest in his employment." *Id.* at 542, 105 S.Ct. at 1493 (quoting *Roth,* 408 U.S. at 569–70, 92 S.Ct. at 2705). Thus, although the process due may vary depending upon the type of property interest involved, the Supreme Court has already defined what process is due when a public employer seeks to terminate a permanent employee: "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. The employee is not, however, entitled to a full adversarial hearing prior to termination.

▇▇ In holding that some form of pretermination hearing is required, the Court balanced the factors set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), namely, "the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Loudermill,* 470 U.S. at 542–43, 105 S.Ct. at 1493. The Supreme Court's balancing of these factors is fully applicable to this case and this court reaches the same conclusion after an independent weighing of the *Mathews* factors.

First, as the Court wrote in *Loudermill,* "the significance of the private interest in retaining employment cannot be gainsaid." *Id.* at 543, 105 S.Ct. at 1494. The defendants have made no argument that Davis did not depend on his position as a firefighter for his livelihood. Second, although the defendants have a strong interest in terminating incompetent or otherwise unsatisfactory employees, they have made no showing that they needed to terminate Davis in advance of "some kind of hearing." Indeed, Davis was afforded a hearing only ten days after his termination. The defendants cannot seriously contend that their interest in terminating Davis—for making a false statement about his back injury—was so strong that it outweighed Davis's interest in continued employment and could not wait the several days necessary to convene an informal hearing.[4] Third, as the Court concluded in *Loudermill,* "some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision," particularly where, as here, there is a factual dispute surrounding the termination. *Id.* Moreover, "the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.*

▇▇ The court holds, therefore, on the basis of *Loudermill's* balancing of the competing interests at stake when a public employer seeks to terminate an employee—and based on its own balancing with respect to the facts surrounding Davis's termination—that Davis was entitled under the procedural component of the due process clause to a hearing prior to his termination as a firefighter by the City of Enterprise. It is undisputed in this case that Davis was terminated without a prior hearing and that the personnel policies of the City of Enterprise purport to authorize such a summary termination. Indeed, Davis was not even provided with advance notice of his termination. The termination letter he received was dated April 6, 1990, and, presumably, Davis received the letter sometime during that day. The letter informed him that his termination was effective April 7, the following day. Based on the court's legal conclusion that Davis was entitled to a pretermination hearing and the undisputed fact that he was not

---

4. The court might reach a different conclusion if there were a "significant hazard in keeping [Davis] on the job"—for example, if Enterprise were terminating him for unsafe firefighting practices. *Loudermill,* 470 U.S. at 544–45, 105 S.Ct. at 1495. *See also Federal Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 240–44, 108 S.Ct. 1780, 1788–89, 100 L.Ed.2d 265 (1988) (statute authorizing suspension prior to a hearing of bank officers indicted for a felony does not violate due process where Congress found that indicted bank officers "pose a threat to the interests of the bank's depositors [and] threaten to undermine public confidence in the bank," and where adequate post-suspension procedures are available). Even in such circumstances, however, the Court has concluded that due process will not permit a final termination without a hearing; rather, the appropriate course is to suspend the employee who poses a danger with pay. *Loudermill,* 470 U.S. at 544–45, 105 S.Ct. at 1495.

provided with such a hearing, the court must conclude that the defendants violated Davis's rights under the procedural component of the due process clause.

Before turning to the question of a remedy for this violation, however, the court must dispose of the defendants' meritless argument that *Loudermill* is not controlling. The defendants assert that this court must analyze Davis's claim under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt*, a prison inmate had ordered certain hobby materials through the mail. When prison employees failed to follow the normal procedures for receipt of mail packages, the hobby materials, valued at $23.50, were lost. The Supreme Court held that a postdeprivation remedy, namely, a state tort claims procedure, was all the process that was due. *Id.* at 543, 101 S.Ct. at 1917.

The defendants' reliance on *Parratt* is unavailing for at least four reasons. First, *Parratt* was decided prior to *Loudermill*. In an area of the law where the type of property interest at stake often determines the extent of process due, the Court's application of the *Mathews* balancing test to a prisoner's interest in $23.50 worth of hobby materials in *Parratt* is not controlling of the process due when an individual is deprived of his employment. In the public employment context, *Loudermill*, not *Parratt*, defines the process due. *Loudermill*, 470 U.S. at 542 & n. 7, 105 S.Ct. at 1493 & n. 7 (citing cases).

Second, the defendants' argument ignores the factual context of Davis's termination. In this case, the Fire Chief, Mayor, and City Council—unlike the prison employees in *Parratt*—did not act in contravention to established procedures, but pursuant to such established procedures. In *Parratt*, there was no contention that the procedures themselves were constitutionally infirm. If it were conceivably possible for the proper procedures to have been followed, the prisoner in *Parratt* would not have been deprived of his property. In the instant case, by contrast,

Davis directly challenges the procedures; the very fact that the procedures were adhered to by city officials is what caused the due process violation.[5] That is, the procedures required the defendants to terminate Davis without a prior hearing and thereby to violate his due process rights.

Third, although it is not clear from their brief, the defendants' reliance on *Parratt* appears to be based on a belief that there is a distinction between state and municipal procedures. That is, they appear to argue that a postdeprivation remedy is sufficient unless *state*, and not simply *municipal*, procedures are at issue. If the defendants are heard to make such an argument, it is easily rejected. For example, in *Fetner v. City of Roanoke*, 813 F.2d 1183, 1185 (11th Cir.1987), the Eleventh Circuit held that a city council's dismissal of its police chief without a pretermination hearing raised a valid procedural due process claim under § 1983. *See also McKinney*, 20 F.3d at 1554 (applying due process analysis to actions of board of county commissioners pursuant to county personnel policies).

Fourth and finally, *Parratt's* holding that a postdeprivation proceeding is sufficient is inapposite because, in that case, predeprivation proceedings were a practical impossibility: a hearing could not be held before the property deprivation—the loss of mail packages—because the deprivation did not occur pursuant to established procedures but because of the negligence of prison employees. The Court wrote that, "It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916. "The loss of property," the Court continued, "although attributable to the State as action under 'color of law,' is in almost all cases beyond the control of the State." *Id. See also Zinermon v. Burch*, 494 U.S. 113, 128, 110 S.Ct. 975, 985, 108 L.Ed.2d 100 (1990) (*Parratt* ... represent[s] a special case ... in which postdeprivation remedies are all the process that is due, simply because they are

5. The Supreme Court distinguished *Parratt* on this ground in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) ("Unlike the complainant in

*Parratt*, Logan is challenging not the Commission's error, but the 'established state procedure' that destroys his entitlement without according him proper procedural safeguards").

the only remedies the State could be "expected to provide").

Although it would have been impossible in *Parratt* to conduct a prior hearing to determine if the prisoner's mail should be lost, there could have been a prior hearing in the instant case to determine if Davis should be terminated. In *Fetner*, the Eleventh Circuit distinguished *Parratt* on similar grounds. In that case, a police chief was terminated without the benefit of prior notice and a hearing. The court wrote:

> "The Roanoke City Council had ample time to give Fetner notice and offer him an opportunity to be heard before they fired him. The touchstone in *Parratt* was the impracticability of holding a hearing prior to the claimed deprivation.... Post-deprivation remedies do not provide due process if pre-deprivation remedies are practicable."

813 F.2d at 1185–86. *Parratt*, therefore, in no way provides a justification for the defendants' failure to provide a pretermination hearing.[6] Again, therefore, the defendants violated Davis's procedural due process rights when he was terminated without prior notice and a hearing.

▮ The court further concludes that the violation of procedural due process in this case was "complete" when Davis was terminated without a hearing and that the violation was not "cured" by the hearings he received after his termination. In *McKin-*

*ney*, the Eleventh Circuit noted that "a procedural due process violation is not complete 'unless and until the State fails to provide due process.'" 20 F.3d at 1557 (quoting *Zinermon*, 494 U.S. at 123, 110 S.Ct. at 983). The court further explained that a "state may cure a procedural deprivation by providing a later procedural remedy." *Id.* Thus, in *McKinney*, where a plaintiff alleged that the decisionmaker at a termination hearing was biased, the state may remedy the violation by providing an appeal to an unbiased decisionmaker. By its very nature, however, when the violation of due process is the failure to provide a pretermination hearing, the violation cannot be cured subsequent to termination. The right is lost once termination has been effected. If the rule were otherwise, a public employee's right to a preretermination hearing as explicated in *Loudermill* would be chimerical and ultimately meaningless because it could be "cured" in each instance simply by providing a hearing after termination.[7] Moreover, the violation of due process is complete even if it later appears certain that the termination was substantively correct. *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).

## III. RELIEF

▮ Having found that Davis's due process rights were violated, the court now turns to the question of remedy.[8] The Su-

---

**6.** The defendants also rely upon a decision of the Alabama Supreme Court, *Roberts v. Joiner*, 590 So.2d 195 (Ala.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2302, 119 L.Ed.2d 225 (1992), which is easily distinguished. First, the Court was reviewing a termination that occurred in 1983, prior to the *Loudermill* decision in 1985. Although the Court relied on *Parratt*, it acknowledged that with the *Loudermill* decision, "the United States Supreme Court's position on whether postdeprivation remedies sufficiently provide due process seems to have changed," *Id.* at 198. The *Roberts* Court declined to apply *Loudermill* retroactively. Second, the plaintiffs in *Roberts* were challenging the actions of a city council, and not the personnel procedures of the town. *Id.* at 201.

**7.** In *Fetner*, the Eleventh Circuit quoted with approval a decision of the Seventh Circuit in which the court wrote that "if [plaintiff] was

indeed fired in violation of his due process rights, the availability of *post-deprivation* grievance procedures or a board hearing would not have cured the violation." 813 F.2d at 1186 (quoting *Schultz v. Baumgart*, 738 F.2d 231, 237 (7th Cir.1984) (emphasis in original)). As discussed below, however, the availability of post-termination proceedings may show that the termination was substantively correct, thereby reducing or eliminating the amount of injury suffered by the plaintiff.

**8.** Although Davis might have sought "reinstatement and a directive that proper procedures be used in any future termination proceedings" against him, *McKinney*, 20 F.3d at 1560, he has not sought such remedies. In any event, because Davis has had two hearings since his termination and feels that he adequately presented his case at each of those hearings, the court's reinstatement of Davis with a directive to provide him an

preme Court has made clear that, even in the absence of any actual injury, a violation of procedural due process is actionable for nominal damages. *Carey*, 435 U.S. at 266, 98 S.Ct. at 1053 ("By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed"). This is so because due process rights are "absolute" and should be actionable even in the absence of injury. The Court further held, however, that damages for procedural due process violations are not to be presumed and that compensatory recovery beyond nominal damages must be based upon proven actual injury. *Id.* The burden is upon the plaintiff to provide such proof of compensatory damages "according to principles derived from the common law of torts." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306, 106 S.Ct. 2537, 2542, 91 L.Ed.2d 249 (1986). It is not, for example, to be presumed that a victim of a procedural due process violation feels emotional distress because "whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." *Carey*, 435 U.S. at 264, 98 S.Ct. at 1052.

■ In this case, because Davis has presented no evidence of emotional distress, the court is unable to award him compensatory damages for this purpose. He also has not shown that his termination, ultimately, was mistaken. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of ... property." *Carey*, 435 U.S. at 259, 98 S.Ct. at 1050. Davis is therefore not entitled to compensatory damages for the ultimate loss of his job.

■ Davis has, however, convinced the court that he suffered damages in the form of loss of earnings. Because Davis had a right not to be terminated prior to "some kind of a hearing," he had a right not to be

removed from the payroll until a hearing was held and a decision reached. Where an employer desires to terminate an employee without a hearing—for example, where the employee poses a significant hazard on the job—the employer may only do so "by suspending with pay." *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495. In *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987), the Eleventh Circuit wrote that an

> "employer may suspend the employee *with* pay even before granting an opportunity to be heard or notice. . . . Since [the employee's] pay was stopped, however, a hearing was required."

*Id.* at 1512 (citation omitted) (emphasis in original). Because Davis's termination was not lawful until he received the benefit of a pretermination hearing, he can be said to have been on "suspension" status until a hearing was held. Davis was therefore injured by being denied his salary between the time of his "suspension" and the date of his first hearing.

Thus, Davis's termination on April 7, 1990, was not lawful until after he was afforded a hearing on April 16. It appears from the record that the hearing held on April 16 before the Mayor would have been sufficient to serve the purposes of a pretermination hearing; Davis has presented no argument to the contrary. Because a decision upholding the termination was also reached on April 16, Davis is entitled to compensatory damages in the amount of the salary he would have received, plus interest, from April 7 to April 16.[9]

■ The court declines to award punitive damages. Punitive damages should be awarded by a court "to deter or punish malicious deprivation of rights." *Carey*, 435 U.S. at 266, 98 S.Ct. at 1054. While the court is convinced that the defendants violated Davis's procedural due process rights, it is not convinced that they did so with malice. The defendants adhered to written proce-

additional, albeit "pre"-termination hearing, would be pyrrhic and non-sensical.

**9.** To the extent that the individual defendants raise the defense of qualified immunity in their

answer, this defense must fail on the authority of *Loudermill*. At least as of 1986, it was clearly established that a public employee could not be terminated without a prior hearing and could only be suspended with pay.

dures and provided Davis with two hearings in relative proximity to the date of his termination. Although the court holds today that the defendants violated Davis's due process rights by adhering to the City of Enterprise's personnel procedures, there is no evidence that they treated him differently from other terminated employees or were motivated by an intent to violate his rights. Accordingly, no punitive damages are authorized or required.

■ The court has also considered the appropriateness of injunctive relief in this case, that is, whether the defendants should be permanently enjoined from terminating employees without a prior hearing in the future. However, because the claims of the Enterprise Fire Fighters' Association and the other individual plaintiffs have been settled, only plaintiff Davis's claims are pending before the court; but, because Davis is no longer employed with the defendants, he does not have standing to seek prospective injunctive relief. This court may not, therefore, enjoin the defendants from terminating firefighters without a pretermination hearing.

It should, however, be readily apparent to the defendants from this court's opinion that they have violated Davis's procedural due process rights under the fourteenth amendment to the United States Constitution. It should be equally apparent to the defendants that a failure to provide one of their employees with a pretermination hearing in the future would be a knowing violation of the due process clause. The court is confident that the defendants—now fully aware of their constitutional obligations—will not knowingly violate the rights of their employees.

An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of this court:

(1) That judgment is entered in favor of plaintiff Rodney O. Davis and against defendants City of Enterprise, Billy Joe Watson, Herbert Ray Cooper, Jacquelyn Thompson, William Cooper, Herbert Gannon, Sr., John-

ny Henderson, Jim McQueen, and Max Ellis on plaintiff Davis's "procedural" due process claim;

(2) That it is DECLARED that defendants City of Enterprise, Watson, Cooper, Thompson, Cooper, Gannon, Henderson, McQueen, and Ellis violated plaintiff Davis's rights under the procedural component of the due process clause of the fourteenth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983, when they terminated his employment as a firefighter for the City of Enterprise on April 7, 1990, without first affording him notice and a hearing;

(3) That plaintiff Davis have and recover from these defendants an amount equal to the salary he would have received between April 7 and April 16, 1990, inclusive, plus interest;

(4) That plaintiff Davis is allowed until July 11, 1994, to file any request for attorneys' fees and expenses; and

(5) That all other relief sought by plaintiff Davis is denied.

It is further ORDERED that costs are taxed against defendants, for which execution may issue.