[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 124 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 125 
 On Application for Rehearing
This Court's no-opinion affirmance of August 11, 2006, is withdrawn, and the following opinion is substituted therefor.
Audie Van Fowler appealed a judgment upholding his termination from employment as a deputy sheriff by James Johnson, the sheriff of Baldwin County. We affirm.
 Facts and Procedural History
Effective December 2002, the sheriffs office for Baldwin County ("the sheriffs office") established its own personnel merit system pursuant to Act No. 2002-463, Ala. Acts 2002, codified at § 45-2-234 et seq., Ala. Code 1975 ("the sheriffs personnel merit system").[1] That Act provides that the sheriffs office would adopt rules and regulations applicable to dismissals, suspensions, and other disciplinary action against employees covered by the sheriffs personnel merit system ("merit employees"). Ala. Code 1975, § 45-2-234.03. Act No. 2002-463
also established the Sheriffs Office Personnel Appeals Board ("the appeals board") to enforce the regulations of the sheriffs personnel merit, system, conduct administrative hearings on appeals by merit employees concerning disciplinary actions, and make recommendations to the sheriff as to whether preliminary disciplinary decisions should be affirmed, reversed, or modified. See Ala. Code 1975, §§ 45-2-234.06,45-2-234.07, 45-2-234.08, and 45-2-234.09. The Act further provides that, after receiving a recommendation from the appeals board concerning the discipline of a merit employee, the sheriff has the final responsibility to approve, disapprove, or modify the appeals board's recommendation. Ala. Code 1975, §45-2-234.09(c)(3).
The operative events leading to Fowler's termination occurred in the first quarter of 2003. Fowler had been employed as a deputy sheriff in Baldwin County for approximately 14 years when the sheriffs personnel merit system was created. Given that longevity, Fowler was a merit employee who had statutory rights related to his employment, including the right not to be terminated except for cause. See Ala. Code 1975, §§45-2-234.01(6) and 45-2-234.03.
Early in 2003 Fowler became the subject of a criminal investigation related to his personal finances and the mishandling of funds in the estate of Susan Greek, for which Fowler's wife had been appointed conservator ("the Greek estate"). Fowler was placed on administrative leave with pay on February 11, 2003, pending that *Page 126 
investigation. Subsequently, Fowler was indicted by a Baldwin County grand jury on three counts — theft, conspiracy, and exploitation of assets in the Greek estate. Fowler's wife was also indicted on similar charges.
Fowler received a telephone call from his attorney on March 26, 2003, advising him and his wife to surrender to the authorities at the county jail on the following day. When he arrived at the jail on March 27, 2003, Fowler met with two law-enforcement representatives — Lt. Charles Jones of the sheriffs office and Stan Stabler of the Alabama Bureau of Investigation. At the jail, Stabler served Fowler with an arrest warrant and advised Fowler of the nature of the charges against him. Further, on March 27, 2003, Lt. Jones delivered to Fowler a letter dated March 26, 2003, signed by the sheriff stating:
 "Re: Notice of Termination
 "Dear Mr. Fowler: "Your employment with the Sheriffs Office is hereby terminated effective this date.
 "You have the right to appeal this action with the Sheriffs Office Personnel [Appeals] Board. To appeal, you may contact Lynne Tedder, Personnel Officer, at (251) ___ — ___. . . ."
While Fowler was at the jail on March 27, Lt. Jones told Fowler that he was being terminated because an indictment had been filed against him. Fowler was then booked into the jail; he was released later that day after posting bail. Fowler was in custody for a period of approximately 30-45 minutes on March 27. Lynne Tedder, the personnel officer for the sheriffs personnel merit system ("the personnel officer"), also sent the sheriff a memorandum on March 27 stating that Fowler's employment was terminated effective March 26, 2003, the last date through which he was paid.
On March 31, 2003, Fowler's attorney appealed the termination of Fowler's employment by writing the personnel officer. Fowler's attorney also asked the personnel officer to furnish a copy of the personnel guidelines for the sheriffs office. The review of the disciplinary action against Fowler was the first administrative proceeding since the creation of the sheriffs personnel merit system. In an April 2, 2003, letter, the personnel officer advised Fowler's attorney that the sheriffs office had not printed and disseminated its own guidelines but was following the practices in the personnel policies and procedural manual used by the Baldwin County Commission ("the manual"). The personnel officer sent Fowler's attorney a copy of the manual and notified him of a tentative hearing date before the appeals board to consider Fowler's appeal.
The manual contained multiple provisions related to termination, suspension, or demotion of a merit employee (hereinafter collectively "disciplinary actions"). The manual provides that the consideration of a disciplinary action generally involves three steps: (a) a predisciplinary hearing; (b) a hearing before a personnel appeals board; and (c) an appeal to the circuit court for a trial de novo. The key provisions in the manual relating to those steps are summarized as follows:
 1. Prior to the institution of a disciplinary action, the employer of the merit employee "shall afford the employee due process in the form of a predisciplinary hearing. Written notice of the reasons for the termination . . . must be given the employee at least twenty-four (24) hours prior to the predisciplinary hearing." (manual, p. 38);
 2. The predisciplinary hearing can be bypassed if "extraordinary situations" exist. Those situations are where (a) retention of the worker would "result in *Page 127 
damage to public property," (b) retention would "result in injury whether to the employee, a fellow employee, or to the general public," (c) "the employee is confined in jail or prison under a writ of arrest or other judicial process," (d) the employee is under the influence, or has in his possession, an intoxicating beverage, illegal drug, narcotic, or controlled substance, or (e) the "personal conduct of the employee is abusive or disruptive to the orderly conduct of the office or department." (manual, p. 38);
 3. if the employer does not hold a pre-disciplinary hearing because of an extraordinary situation, the employer "shall, nevertheless, furnish written notice of the reasons for the termination or suspension within 24 hours of such dismissal or suspension." (manual, p. 38);
 4. A merit employee may appeal an adverse disciplinary action to a personnel appeals board. That board will conduct an administrative hearing to review the action. In conducting the hearing, the appeals board may subpoena witnesses, compel production of documents, administer oaths; the parties may be represented by counsel at the hearing, and the board may receive testimony without applying rules of evidence, (manual, pp. 34-35);
 5. Within seven days after the employer receives a notice that the employee intends to appeal a disciplinary action to the appeals board, "the personnel [officer] shall file with the chairman of the board and mail to the employee by certified mail a statement specifying the charges against the employee on which the disciplinary action is based." (manual, p. 35);
 6. "Any employee may be dismissed for the good of the County service. Reason(s) for dismissal may include, but shall not be limited to:
 "-Incompetency or inefficiency in the performance of duties;
 "-Conviction of a felony offense or of a misdemeanor involving moral turpitude;
 . . . .
 "-Incapacity for proper performance of duties;
 ". . . ." (manual, pp. 38-39); and
 7. After final administrative action concerning a disciplinary action, "the employee shall be entitled to, within 7 days, appeal to the Circuit Court of Baldwin County for a nonjury trial de novo." (manual, p. 34.)
(Emphasis added.)
The sheriffs office did not conduct a predisciplinary hearing before terminating Fowler's employment. Further, the sheriffs office did not furnish Fowler a written notice within 24 hours after his dismissal specifying the reasons for his termination, as required by the manual. Additionally, the personnel officer did not provide Fowler a statement by certified mail within seven days of Fowler's appeal of his termination specifying the charges on which the disciplinary action was based.
Fowler's appeal was heard by the appeals board on April 17, 2003 ("the administrative hearing").[2] Larry Milstid, the chief deputy in the sheriffs office, represented the sheriff at that hearing and presented evidence to support Fowler's termination. No witnesses other than Milstid testified for the sheriff. Fowler — then under indictment — did not testify at the administrative *Page 128 
hearing, but his attorney participated in the hearing.
Milstid's presentation at the administrative hearing addressed events related to Fowler's indictment and his employment history over his 14-year career. Approximately 15 minutes before that hearing, Milstid provided Fowler's attorney with a document summarizing Fowler's work history. That document noted allegations of mishandling of funds in the Greek estate and Fowler's indictment and summarized events concerning eight employment matters unrelated to the indictment. Four of those eight events led to disciplinary warnings against Fowler, and the other four were matters that had been investigated by the sheriffs office and for which no disciplinary action had been taken. The document that summarized Fowler's employment was presented to and considered by the appeals board. Milstid stated that he introduced that document and presented facts about Fowler's entire personnel history because personnel boards in Baldwin County had requested that type of background information in other proceedings in which he had participated.[3]
The chairman of the appeals board sent the following letter to Fowler's attorney on April 21, 2003:
 "Dear Mr. Bolton:
 "We have an appreciation for Mr. Fowler's position that [the sheriffs March 26, 2003,] termination letter could have been more detailed. However, the Baldwin County Sheriffs Office Personnel Appeals Board is in agreement with the action taken by the Sheriff.
 "Sincerely,
 "/s/ Sgt. Robert E. King
 "Chairman"
The record does not reflect that the sheriff formally accepted the recommendation of the appeals board to sustain Fowler's termination. However, on June 4, 2003, the personnel officer made an entry in Fowler's employment file that stated that Fowler had been "terminated due to grand jury indictment on three felony charges."
On April 29, 2003, Fowler sued the sheriff and the appeals board in the Baldwin Circuit Court, asserting claims arising from the termination of his employment. Thereafter, Fowler filed an amended complaint in that action in which he added the Baldwin County Commission ("the Commission") and Baldwin County ("the County") as defendants. In counts I and II of that amended complaint, Fowler asserted claims alleging violations of his procedural due-process rights under the Alabama Constitution of 1901.[4] Those due-process claims were based primarily on allegations that the sheriffs office had failed to provide Fowler written notices of the reasons for his termination or to conduct a full and impartial administrative hearing. As relief, Fowler requested that the trial court set aside the decision of the sheriff and the appeals board to terminate his employment, reinstate him as a deputy sheriff with back pay, and award compensatory and punitive damages and attorney fees for the alleged violation of his due-process rights.
On August 6, 2003, the County and the Commission filed a motion to dismiss or to strike the claims asserted against them. *Page 129 
After those parties argued that neither could be held vicariously liable for the sheriffs actions, the trial. court granted that motion on August 29, 2003. Following the dismissal of the County and the Commission, the sheriff and the appeals board were the only remaining defendants in the trial court.
On June 30, 2004, the sheriff and the appeals board moved for a summary judgment on all claims asserted by Fowler against them. In that motion, they argued that they were immune from liability under Alabama law and that the trial court should sustain their respective decisions to terminate Fowler's employment. On September 1, 2004, the trial court granted the sheriff and the appeals board's motion on "all claims except [those to be heard at] the de novo hearing."
Following discovery, the trial court held a nonjury trial on November 30, 2004, concerning Fowler's termination. Fowler, Milstid, Stabler, and the sheriff testified at that trial. The trial court received testimony and heard arguments from counsel on a wide-ranging set of topics. Those included the criminal investigation of Fowler's finances; the indictment and other events in the first quarter of 2003 that led to the termination of Fowler's employment; the reasons for the termination; the course of events at the administrative hearing; evidence by Fowler on damages he allegedly suffered because of the termination of his employment; testimony from Fowler that, before the administrative hearing, the sheriffs office did not provide him any written notice specifying the reasons his employment was being terminated; testimony from witnesses and arguments of counsel about the applicability of the manual to Fowler's disciplinary action; and testimony supporting Fowler's claims that he had been denied procedural due process.
The trial court entered the following order on December 16, 2004:
 "After reviewing the documents presented, hearing testimony and arguments of the attorneys, the Court finds that [Fowler's] due process rights were not violated and the Defendant, James B. Johnson, Sheriff, acted properly and within his authority in the discharge of [Fowler] from employment. APPEAL DISMISSED."
Fowler filed a postjudgment motion for a new trial. The trial court denied that motion, but on February 16, 2005, amended the last sentence of its December 16, 2004, order to read that "[Fowler's] appeal of the dismissal of employment and all other claims is DENIED." Fowler appealed the judgment entered against him on February 16, 2005, on his claims against the sheriff.[5]
On August 11, 2006, we affirmed *Page 130 
without opinion the trial court's judgment sustaining the sheriffs actions. Fowler thereafter applied for a rehearing.
 Standard of Review
The usual standard for judicial review of decisions by administrative agencies was stated in Mobile CountyPersonnel Board v. Tillman, 751 So.2d 517
(Ala.Civ.App. 1999):
 "An administrative agency's decision will not be reversed unless it is arbitrary, capricious, or legally incorrect. This court and the trial court must give substantial deference to an agency's interpretation of its rules and regulations. `[A]n agency's interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.'"
751 So.2d at 518 (citations omitted).
Here, the manual, which was used in Fowler's disciplinary action, contemplated a novel step following the administrative hearing — a trial de novo in the circuit court.[6] When the trial court holds such a trial, the ore tenus
standard applies in our review of any findings of fact made by that court. A presumption of correctness accompanies the trial court's findings of fact based on disputed oral testimony.Woodland Grove Baptist Church v. Woodland Grove Cmty.Cemetery Ass'n, Inc., 947 So.2d 1031 (Ala. 2006); Weeksv. Wolf Creek Indus., Inc., 941 So.2d 263 (Ala. 2006). Under the ore tenus standard, the judgment of the trial court may not be disturbed unless its findings are "`clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.'" Pollard v. UnusProps., LLC, 902 So.2d 18, 23 (Ala. 2004) (quotingAmerican Petroleum Equip. Constr., Inc. v.Fancher, 708 So.2d 129, 132 (Ala. 1997)). A de novo standard applies in our review of the trial court's conclusions of law or its application of law to the facts. Padgett v. ConecuhCounty Comm'n, 901 So.2d 678, 685 (Ala. 2004); AmericanPetroleum Equip., 708 So.2d at 132.
 Discussion A. Was the manual applicable to Fowler's disciplinary action?
Fowler's procedural due-process claims are based on the sheriffs failure to follow certain procedural steps in the manual before terminating his employment. As a threshold issue, we address whether the provisions in the manual were binding.
On April 2, 2003, the personnel officer advised Fowler's attorney that, in the absence of personnel procedures tailored for the newly formed sheriffs personnel merit system, the manual would be used for the administrative proceedings related to Fowler's disciplinary action. Notwithstanding that representation, the sheriff argues that Act No. 2002-463 (which established the sheriffs personnel merit system) does not contemplate that the procedural safeguards in the manual apply to the sheriffs personnel merit system.[7] We *Page 131 
disagree. Because the personnel officer designated the manual as the guideline for the administration of Fowler's disciplinary action, the sheriff is estopped to deny the applicability of the manual or its provisions.
 B. Was the fact that Fowler was indicted cause for terminating his employment?
Fowler was a merit employee who could be disciplined only for cause. Pages 38-39 of the manual list examples of "cause" for termination. One of those is "conviction of a felony or of a misdemeanor involving moral turpitude."[8]
The sheriffs office took the position in the administrative hearing and at the trial de novo in the circuit court that Fowler's employment had been terminated because of his March 2003 felony indictment. Fowler argues that he was wrongfully terminated because the manual required that he beconvicted of, not merely indicted for, a felony before the sheriff would have cause for terminating his employment. Fowler's argument is without merit for two reasons.
First, a felony conviction was not a condition precedent to Fowler's termination. Page 38 of the manual states that a merit employee could be "dismissed for the good of the County service." In the provisions immediately following this statement, the manual states that "reasons for dismissal would include, but not be limited to, . . . a felony conviction." Therefore, the just-cause standard on page 38 — "for the good of the County service" — is broader than, and is not limited to, a felony conviction.
Second, the trial court heard substantial testimony in the November 2004 trial indicating that Fowler's indictment was detrimental to the County service. Specifically, Milstid testified that, if Fowler had continued his employment after his indictment, he would not have been effective in his work as a deputy sheriff because Fowler would not have had the respect of his peers or of the public. The sheriff also testified that a law-enforcement officer under indictment would not have the trust of the public or of fellow law-enforcement officials. Fowler himself testified that a law-enforcement officer could not effectively carry out the laws of the State under the cloud of an indictment.
In light of the sheriffs authority to dismiss a merit employee "for the good of the County service" and the testimony at the November 2004 trial concerning the negative impact of Fowler's indictment on his work as a deputy sheriff, the trial court's finding that the sheriff had just cause to terminate Fowler's employment will not be disturbed.
 C. Were Fowler's procedural due-process rights violated?
In addition to rejecting Fowler's wrongful-termination claim, the trial court found that in the process of terminating Fowler's employment the sheriff did not violate Fowler's due-process rights. Fowler argues that that finding was erroneous and that his termination was "void because of the [sheriffs] failure to comply with the notice and pre-disciplinary requirements [in the manual]."
Procedural due process is afforded when an individual receives notice and an opportunity to be heard that is appropriate to the nature of his interest. Cleveland *Page 132 Bd. of Educ. v. Loudermill, 470 U.S. 532, 542,105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Page 38 of the manual stated that merit employees should receive a predisciplinary hearing before dismissal. The sheriffs office did not conduct that hearing in Fowler's case. In Todd v. Kelley,783 So.2d 31 (Ala.Civ.App. 2000), the Court of Civil Appeals discussed the significance of such a hearing in a case concerning the dismissal of a police officer protected under the City of Millport's merit system:
 "Because Todd [the police officer] was a merit employee and therefore could be dismissed only for cause, he had a property right in continued employment with the City. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701, 33 L.Ed.2d 548
(1972). Thus, the City could not deprive him of this right without constitutionally adequate proceedings, or due process. Loudermill, 470 U.S. at 541, 105 S.Ct. 1487. Due process for a tenured public employee requires a pretermination opportunity to respond to the employer's charges, coupled with adequate post-termination administrative procedures. Id. at 547-48, 105 S.Ct. 1487. Although the pretermination hearing `need not be elaborate,' id. at 545, 105 S.Ct. 1487, due process mandates `"some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.' Id. at 542, 105 S.Ct. 1487 (quoting Board of Regents v. Roth, 408 U.S. at 569-70, 92 S.Ct. 2701)."
783 So.2d at 44. The Todd court held that the failure of the City of Millport to conduct a predisciplinary hearing was a violation of the officer's procedural due-process rights.783 So.2d at 44-45.
Here, as in Todd, Fowler had a property right in continued employment with the sheriffs office because he could be dismissed only for cause. Notwithstanding, the sheriff argues that a predisciplinary hearing was not required before Fowler's employment was terminated because two of the "extraordinary situations" contemplated on page 38 of the manual existed and allowed the sheriff to bypass that step: (a) the "employee was confined in jail or prison," and (b) the "personal conduct of [Fowler was] abusive or disruptive to the orderly conduct of the office." If either of those situations existed, the sheriffs failure to conduct a predisciplinary hearing is excused. Evaluating the evidence, however, we conclude that neither exception applied. Fowler was confined at the county jail for 30-45 minutes on March 27, 2003, the day after his termination was effective; therefore, the first exception is inapplicable because he was not "confined in jail" when he was terminated. Moreover, before his termination on March 26, Fowler had been on administrative leave with pay for almost six weeks. The sheriffs argument that a predisciplinary hearing could not be held on or before March 26 because Fowler — then absent from work for over a month — might exhibit conduct that would be "abusive or disruptive" to the sheriffs office strains credibility. Accordingly, Fowler's claim that the sheriff denied him procedural due process by failing to conduct a predisciplinary hearing is meritorious.
Second, the sheriff did not furnish Fowler written notice specifying the reasons for his termination. The manual states that such notices should be given (a) 24 hours before the predisciplinary hearing, if one is held, (b) within 24 hours after the employee's termination if a predisciplinary hearing was not conducted, and (c) within 7 days after an appeal to the appeals *Page 133 
board. The sheriff argues that his failure to provide Fowler those written notices was harmless because Fowler was orally advised on March 27, 2003, that his employment was being terminated as a result of the indictment and because Fowler had an opportunity to call witnesses and to contest his termination at the administrative hearing. We disagree.
Fowler was prejudiced by the sheriffs failure to specify in writing the reasons for the termination of Fowler's employment. The sheriffs office did not limit its presentation in the April 2003 administrative hearing to Fowler's indictment. Indeed, Milstid, the sheriffs representative at that hearing, made a presentation to the appeals board concerning Fowler's entire 14-year work record. That evidence, which included written documentation, addressed eight events that were unrelated to the indictment. Moreover, Milstid gave Fowler's attorney notice only 15 minutes before that hearing that the sheriff would be addressing the entirety of Fowler's work career at the hearing. Under these facts, the administrative hearing before the appeals board was infirm because Fowler was not provided a fair opportunity to subpoena and call witnesses, to present testimony, and otherwise to address events that transpired over a 14-year period.
Accordingly, in view of the sheriffs failure to conduct a predisciplinary hearing or to provide Fowler the written notices specifying the reasons for his termination, the trial court erred when it found that the sheriff had not violated Fowler's procedural due-process rights.
D. Remedy for procedural due-process violations
We next consider what remedy should apply on Fowler's procedural due-process claims. In analyzing this remedial issue, we first consider that any procedural due-process infirmities in the administrative process were cured no later than the November 30, 2004, trial in the circuit court. By that time, Fowler had full notice of the reasons for the disciplinary action against him, had received an opportunity to conduct discovery in the case in the circuit court, and had had ample opportunity to prepare for the trial — his second opportunity to contest the termination.
On appeal, neither party has addressed what remedy should apply when, as here, the decision to terminate an employee's employment was valid, but procedural due-process violations occurred. In Enterprise Fire Fighters' Ass'n v. Watson,869 F.Supp. 1532 (M.D.Ala.1994), the United States District Court for the Middle District of Alabama crafted a remedy for a procedural due-process violation in a situation similar to the one here. Watson, a merit-system employee, was discharged after he had made a false statement to his supervisor. Like Fowler, Watson did not receive a predisciplinary hearing before his employment was terminated, as was contemplated in the applicable personnel manual. Watson appealed his termination, but that decision was upheld following an administrative hearing conducted nine days after his dismissal. 869 F.Supp. at 1536.
Watson then sued his employer under 42 U.S.C. § 1983 and sought reinstatement and damages for alleged violations of his procedural due-process rights. As did the trial court here, the United States District Court in Watson found that the employee had no substantive right to continued employment and sustained the decision at the administrative-appeals level to uphold the termination. However, that court also determined that Watson had been denied procedural due process because his employer had failed to conduct a predisciplinary *Page 134 
hearing before his termination. 869 F.Supp. at 1539. In view of that violation, the federal district court ruled (a) that Watson's termination was unlawful until the administrative appeal of his discharge was conducted, and (b) that, as damages for the violation of his procedural due-process rights, he should receive back pay for the nine-day period between his termination and the administrative appeal. 869 F.Supp. at 1542.
One Alabama case suggests that reinstatement and back pay are appropriate remedies in an action by a merit-system employee against a sheriff. In Ex parte Woodward, 859 So.2d 425
(Ala. 2003), two merit-system employees whose employment was terminated sued the sheriff of Jefferson County in his individual and official capacities; those discharged employees also joined the Jefferson County personnel board as a defendant in their action. Even though this Court decided that the sheriff could not be sued in his individual capacity, footnote 4 of theWoodward opinion stated:
 "We note that the trial court may choose to reinstate [the two discharged employees] with back pay; our opinion today merely stands for the proposition that [the discharged employees] may not obtain back pay or any other monetary damages from Woodward in his individual capacity."
859 So.2d at 427.[9]
In light of the principles in Watson and footnote 4 ofWoodward, it could be argued that Fowler was entitled to back pay for the period between March 27, 2003 — the day after his employment was terminated — and November 30, 2004 — the date of the trial de novo in the circuit court. However, given the procedural posture of this case, Alabama law precludes the entry of an order requiring the sheriff to compensate Fowler for back pay for even that limited period.
Here, the sheriff is the sole appellee.[10] Article I, §14, Ala. Const. 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." The sheriff is an executive officer of the State under Article I, § 112, Ala. Const.1901. A suit against a sheriff "essentially [is] a suit against the state." Parker v.Amerson, 519 So.2d 442, 445 (Ala. 1987) (quotingMontiel v. Holcombe, 240 Ala. 352, 199 So. 245
(1940)). In Alabama, actions may be brought against a sheriff related to execution of his duties only under the following circumstances:
 "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute."
519 So.2d at 443.
In Employees of the Montgomery County Sheriff's Departmentv. Marshall, 893 So.2d 326 (Ala. 2004), this Court considered the "ministerial acts" exception and the extent of a sheriffs immunity on a claim to pay compensation to his employees. In Marshall, employees in Montgomery County's sheriffs office sued the sheriff *Page 135 
and the county commission seeking overtime pay attributable to guard service that those employees had performed at the county jail. The sheriff argued that he was immune from that claim. The claimants responded that payment of compensation by a sheriff to his own employees fell under the "ministerial act" exception to state immunity. Noting that § 14-6-105, Ala. Code 1975, provides that counties, not the State, are responsible for funding the expense of guards at county jails in Alabama, theMarshall Court held that the employees had "failed to establish that payment of overtime compensation is a ministerial act the sheriff can be compelled to perform." 893 So.2d at 331. Accordingly, it affirmed a summary judgment for the sheriff on breach-of-contract and quantum meruit claims against him in both his official and individual capacities.[11]
Benefits, salaries, and other personnel activities in the sheriffs office are paid through the general fund of Baldwin County. Section 45-2-234.04, Ala. Code 1975, provides:
 "All employees of the office of Sheriff of Baldwin County shall continue to participate and be serviced in matters of health insurance, life insurance, and disability insurance by the Baldwin County Commission. The office of sheriff shall administer all matters regarding personnel overtime, longevity, subsistence, salaries, retirement, Social Security, workers' compensation, and retirement cost-of-living for employees of the sheriffs office. The financial accounting and maintenance of these activities shall be from an account of the office of sheriff with a local banking institution and from funds which are provided for these activities from the county's general fund budget."
(Emphasis supplied.) Applying the principle in Marshall
here, we conclude that a court may not order the sheriff to compensate Fowler for back pay or benefits during the period preceding the November 2004 trial. As decided inMarshall, sheriffs are immune from liability for such compensation if the State is not the funding mechanism. Accordingly, Fowler's application for rehearing is denied because of the broad scope of the sheriffs immunity under the Alabama Constitution.[12]
 Conclusion
For the reasons stated above, Fowler's application for rehearing is denied.
APPLICATION OVERRULED; NO-OPINION AFFIRMANCE OF AUGUST 11, 2006, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[1] Act No. 2002-463 became effective on December 12, 2002, upon ratification of Amendment No. 717 to the Alabama Constitution of 1901.
[2] The five members of the appeals board were selected after Fowler had filed his appeal. Two members were appointed by the sheriff; two were elected by employees of the sheriff's office; and those four selectees chose the fifth member. See
Ala. Code 1975, § 45-2-234.06(b).
[3] The record does not include a transcript of the administrative hearing. However, evidence concerning the course of events at that hearing was presented at a de novo nonjury trial held in the Baldwin Circuit Court on November 30, 2004.
[4] Article I, § 6, Ala. Const. 1901, provides that a person may not be deprived of "life, liberty or property, except by due process of law." Fowler did not allege violation of federal due-process rights under 42 U.S.C. § 1983.
[5] The appeals board was also a defendant in Fowler's action. The appeals board has authority under Ala. Code 1975, §45-2-234.08(f). to affirm, revise, and amend any previous personnel decision in the sheriff's office after a hearing, but the sheriff is the final authority on personnel actions. In his briefs to this Court, Fowler variously references the sheriff and his department, but does not make any argument or specific claim concerning the appeals board that is separate from the claims made against the sheriff. Further, Fowler did not name the appeals board as an appellee in his notice of appeal and docketing statement. Under these circumstances, Fowler has waived any claim against the appeals board. See Tucker v.Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319
(Ala. 2003) (holding that "`[w]hen an appellant fails to properly argue an issue, that issue is waived and will not be considered'" and stating that "`an appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief" (quoting Asam v. Devereaux, 686 So.2d 1222, 1224
(Ala.Civ.App. 1996), and Braxton v. Stewart,539 So.2d 284, 286 (Ala.Civ.App. 1988), respectively)).
[6] Neither party has directed us to any Alabama authority in which a trial de novo was conducted in the circuit court following the administrative review of a disciplinary action against a merit employee.
[7] The sheriff argues that Act No. 2002-463 granted Fowler a general right to appeal a disciplinary action but did not contemplate the comprehensive notice and three-step hearing process in the manual. Further, the sheriff also argues that, when Fowler was originally employed by the sheriff's office, his commission could be terminated for any reason. That at-will employment concept is diametrically opposed to the provisions on pages 38-39 of the manual that require cause for imposing a disciplinary action against a merit employee.
[8] Fowler and other permanent employees in the sheriff's office who had been employed more than six months before transferring into the sheriff's personnel merit system were covered under merit-system regulations. See Ala. Code 1975, §§ 45-2-234.01(6), 45-2-234.02, and 45-2-234.03.
[9] The Jefferson County personnel board remained a party inEx parte Woodward after the claim against the sheriff was dismissed.
[10] Fowler did not appeal the trial court's dismissal of his claims against the County and the Commission. Further, as discussed in note 5 above, he has waived any claim against the appeals board.
[11] The Montgomery County Commission, the funding agency for the Montgomery County jail, remained a defendant inMarshall after the summary judgment was entered for the sheriff.
[12] An appellate court may affirm a judgment of the trial court for any valid reason, regardless of whether that reason was considered by the trial court. General Motors Corp. v. StokesChevrolet, Inc., 885 So.2d 119, 124 (Ala. 2003).